165   103
174   463
73a   675
73a   678

THE AMERICAN EXCHANGE NATIONAL BANK

03:39 LRA 89

*v.*

THE LORETTA GOLD AND SILVER MINING COMPANY.

*Filed at Ottawa November 9, 1896—Rehearing denied March 3, 1897.*

1. BANKS—*special deposit cannot be used by bank for other purposes.*
A deposit of a fund with a bank "for credit of account" of its correspondent, "for the use" of a designated party, is a special deposit with a designated beneficiary, and the receiving bank becomes the special depository of the fund, to deal therewith in strict accordance with the terms of the deposit.

2. SAME—*special deposit, the purpose of which is defeated, is subject to depositor's disposal.* Where a fund is deposited with a bank to be transmitted to its correspondent for the use of a designated beneficiary, the failure of the correspondent bank before transmission of the fund defeats the purpose of the deposit, and the receiving bank must hold the same subject to the depositor's order, and can not apply it to its own account with the insolvent bank.

3. SAME—*revocable book entries do not operate to transfer title to funds which are the subject thereof.* Book entries made by a bank, on notice from a party that he had deposited with its correspondent a fund for the use of one of its customers, crediting the amount to such customer and debiting the same to its correspondent, are provisional, merely, and do not operate to transfer the title to the fund to the bank before receipt, either of the fund itself or notice from its correspondent authorizing the entries.

4. SAME—*deposit not fully received before formal insolvency may be recovered by depositor.* A deposit which has been kept separate and not fully received by a bank before formal insolvency may be recovered by the depositor in preference to other creditors.

*Am. Ex. Nat. Bank* v. *Loretta Mining Co.* 60 Ill. App. 626, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an action of assumpsit brought by appellee against appellant to recover $750.00 deposited by appellee with appellant under the circumstances hereinafter stated. The declaration contained the common counts only, and the plea was the general issue. The case was

tried before the court without a jury upon an agreed state of facts.

Plaintiff requested the court to hold the following proposition of law:

"The court holds, as a matter of law, that upon the facts admitted and agreed upon in this case plaintiff is entitled to recover."

Defendant requested the court to hold as follows:

"That upon the facts admitted and agreed upon in this case the finding upon the issues therein must, as a matter of law, be for the defendant."

The court refused the proposition tendered by the plaintiff and held the proposition tendered by the defendant, and thereupon found the issues for the defendant, and, after overruling a motion for new trial, rendered judgment for the defendant, and against the plaintiff for costs. Upon appeal to the Appellate Court, the latter court reversed the judgment of the circuit court, and entered judgment for $750.00 and costs in favor of the present appellee, and granted a certificate of importance. The present appeal is from the judgment of the Appellate Court.

The agreed statement of facts is as follows:

"Plaintiff is a corporation organized under the laws of Wisconsin, and owned and operated a mine at Barker, Montana. M. J. Dunn was plaintiff's general superintendent at Barker. Defendant is a banking corporation organized under the National Banking act, and does business at Chicago, Illinois.

"On July 21, 1893, plaintiff mailed at Milwaukee, Wisconsin, to defendant at Chicago, Illinois, a letter enclosing a draft, in the form of a draft drawn by one bank upon another, payable to the order of defendant, for the sum of $750. Copy of letter enclosing draft is as follows: 'Enclosed please find draft for $750, for credit of account Merchants' National Bank, Great Falls, Montana, for the use of M. J. Dunn, our superintendent at Barker, Mon-

tana.'  On July 21, 1893, plaintiff telegraphed said Dunn
at Barker, Montana, as follows:    'Have deposited your
account $750.'    On the same day plaintiff telegraphed
the Merchants' National Bank of Great Falls, Montana:
'Have deposited $750 M. J. Dunn's account.'    Prior to
May 10, 1893, and up to and including the failure of the
Merchants' National Bank, M. J. Dunn kept a bank ac-
count with it in his own name, and kept in said account,
without the knowledge or consent of plaintiff, but with
the knowledge of said Merchants' National Bank, funds
belonging to the plaintiff.    Said $750 was to be used by
Dunn as plaintiff's superintendent and on plaintiff's ac-
count.    Said Merchants' National Bank, on receipt of the
foregoing telegram from plaintiff to it on July 21, 1893,
credited said $750 to said Dunn's account.    The particu-
lar manner in which the deposit was made was unknown
to the plaintiff, but the Merchants' National Bank knew
that said fund belonged to plaintiff.

"On July 21, 1893, the Merchants' National Bank
charged said $750 on its books to defendant's account.
The letter and draft for $750 were received by defendant
at Chicago on July 22, 1893, and no other or different in-
structions regarding said draft were given to it by plain-
tiff.    Plaintiff was not, at the time of the receipt of the
draft by defendant, nor has it since been, indebted to de-
fendant in any sum whatever.    Defendant, for more than
a year prior to July 23, 1893, was the correspondent at
Chicago of said Merchants' National Bank, and said last
named bank kept an account current with the defendant.
Said sum of $750 was on July 22, 1893, credited generally
to the account of the Merchants' National Bank on its
books, but without the knowledge or consent of plaintiff.
Said funds were never in fact forwarded by the defend-
ant to the Merchants' National Bank or to Dunn, and on
July 22, 1893, defendant, without the knowledge or con-
sent of the plaintiff, mailed to said Merchants' National
Bank a postal card advising said Merchants' National

Bank that it had credited its account with said $750. Said postal card was not received by said Merchants' National Bank until after July 23, 1893.

"At the close of business on July 23, 1893, said Merchants' National Bank closed its doors and did not reopen them thereafter, and on the morning of July 24, 1893, said Merchants' National Bank went into the hands of the national bank examiner, pursuant to orders from the comptroller of the currency, and a receiver was subsequently appointed who is now winding up the affairs of said bank. Plaintiff demanded from defendant said sum of $750 on July 26, 1893, and at divers times since. At the time of the receipt by the defendant of said $750, and at the time of the failure of the said Merchants' National Bank, said bank was indebted to defendant in an amount largely in excess of $750. Defendant has not paid to the plaintiff said sum of $750, but has declined and refused to do so.

"On September 11, 1893, M. J. Dunn, without the knowledge, consent or authority of the plaintiff, filed with the receiver of the Merchants' National Bank a proof of claim as follows:—Affidavit of M. J. Dunn, that the Merchants' National Bank is justly indebted to him in the sum of $756.63 on account of individual deposit; that said sum is due to him alone, and that he has given no assignment or endorsement of the same, and knows of no set-off or legal or equitable defense. (Sworn to before a notary public.) Said claim has been allowed against said bank, but without the knowledge, consent, procurement or authority of the plaintiff. Said claim includes a balance of $6.63, which on July 20, 1893, stood to the credit of Dunn, and also includes said sum of $750 placed to the credit of said Dunn on July 21, 1893, on receipt of plaintiff's telegram above mentioned, all of which was unknown to plaintiff. Said claim includes the $750 which plaintiff is seeking to recover in this case.

"On May 10, 1893, plaintiff sent by mail from Milwaukee, to defendant at Chicago, a bank draft in the form of drafts usually drawn by one bank upon another for $2000, payable to its order and enclosed in a letter, as follows: 'Enclosed please find draft for $2000, for credit of account of Merchants' National Bank, Great Falls, Montana, for use of M. J. Dunn, our superintendent at Barker, Montana.' On the same day plaintiff telegraphed Dunn: 'Have deposited your account $2000,' and telegraphed the Merchants' National Bank: 'Have deposited $2000 M. J. Dunn's account.' On May 10 the Merchants' National Bank credited said $2000 to Dunn's account and on the same day charged the same to defendant's account. Said Merchants' National Bank knew that said Dunn was the plaintiff's superintendent, and that said fund belonged to plaintiff and was to be used in plaintiff's business. Defendant received said draft for $2000 on May 11, 1893, and placed the same to the credit of the Merchants' National Bank generally, without the knowledge or consent of plaintiff, and on May 11 advised the Merchants' National Bank, by letter, of said credit, without the knowledge or consent of the plaintiff.

"On June 2, 1893, plaintiff mailed to defendant from Milwaukee a draft in the form drawn by one bank upon another, payable to its order, for $1700, with letter of advice, as follows: 'Enclosed please find draft for $1700, for credit of account of the Merchants' National Bank, Great Falls, Montana, use of M. J. Dunn, our superintendent at Barker, Montana.' On June 2, 1893, plaintiff telegraphed Dunn: 'Have deposited your account $1700,' and on the same day telegraphed the Merchants' National Bank: 'Have deposited $1700 M. J. Dunn's account.' The Merchants' National Bank received said telegram from plaintiff on June 2, 1893, and on the same day credited the said $1700 to the account of Dunn, but the particular manner in which said deposit was made was unknown to plaintiff. On the same day the Merchants' National Bank

charged said $1700 on its books to defendant's account. Defendant received said last mentioned letter on June 3, 1893, and without the knowledge or consent of the plaintiff credited the same generally on its books to the account of the Merchants' National Bank, and advised said bank of such credit by mail.

"On June 6, 1893, plaintiff mailed at Milwaukee, to defendant at Chicago, a draft for $1100, enclosed in letter of advice, as follows: 'Enclosed please find draft for $1100 for credit of account of Merchants' National Bank, Great Falls, Montana, use of M. J. Dunn, our superintendent at Barker, Montana.' On June 6, 1893, plaintiff telegraphed said Dunn: 'Have deposited your account $1100,' and on the same day telegraphed the Merchants' National Bank: 'Have deposited $1100 M. J. Dunn's account.' The Merchants' National Bank received said telegram on June 6, 1893, and credited said $1100 to Dunn. On June 7, 1893, the defendant received said last mentioned letter and draft, and credited the same generally on its books to the account of the Merchants' National Bank without the knowledge or consent of plaintiff, and on June 7 advised the Merchants' National Bank, by letter, of such credit.

"On and prior to May 10, 1893, and up to and including the failure of the Merchants' National Bank, it had been agreed between plaintiff and said bank that when plaintiff should telegraph said bank that plaintiff had deposited any money for M. J. Dunn's account, said Merchants' National Bank should understand that such deposit had been made by plaintiff with defendant for the credit of the account of the Merchants' National Bank with defendant, for the use of M. J. Dunn, as plaintiff's superintendent, and that on receipt of any such telegram said Merchants' National Bank should, and in each instance did, at once place the amount mentioned in the telegram to the credit of said Dunn on the books of the Merchants' National Bank, and that the same at once became subject to the payment of said Dunn's checks; that such arrange-

ment between plaintiff and the Merchants' National Bank was made in order that any amount that plaintiff might send to defendant under said agreement might at once be credited to said Dunn's account on the books of the Merchants' National Bank and be at once available to check against.

"It is agreed that the court may draw any inferences of fact from the facts herein agreed to that a jury would be at liberty to draw from such facts if proved at the trial. Both sides reserve the right of appeal from such judgment as shall be entered in the premises, and the right to sue out a writ of error."

SWIFT, CAMPBELL, JONES & MARTIN, for appellant.

DEFREES, BRACE & RITTER, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Appellee sent to appellant a draft for $750.00 saying: "Enclosed please find draft for $750.00 for credit of account Merchants' National Bank, Great Falls, Montana, for the use of M. J. Dunn, our superintendent at Barker, Montana." The letter enclosing the draft notified appellant, that the money did not belong to the Montana bank, but that such money belonged to appellee, or to Dunn, its superintendent in Montana. The appellant, at the time it received the money, was the correspondent at Chicago of the Montana bank, and the latter bank kept an account current with appellant. When the appellant took the money of appellee into its hands, it became charged with the duty of transmitting it to the Montana bank for the use and benefit of appellee's superintendent, or of holding it subject to the order of the Montana bank acting in the interest and for the benefit of appellee. This duty it was under obligations to perform in strict accordance with its instructions. (*Judy* v. *Farmers' and Traders' Bank*, 81 Mo. 404; *United States Bank* v. *Mac-*

*alister*, 9 Pa. St. 475; *Parker* v. *Hartley*, 91 id. 465; *Bank of British North America* v. *Cooper*, 137 U. S. 473; *Commercial Nat. Bank* v. *Hamilton Nat. Bank*, 42 Fed. Rep. 880; *Armstrong* v. *National Bank of Boyertown*, 90 Ky. 431). The deposit made by appellee with appellant was a special deposit for a designated beneficiary and could not be used or dedicated by appellant to any other purpose. Appellant having become the special depository of the fund was bound to retain it, until it was drawn out by the Montana bank for the use of appellee's superintendent. (*Cutler* v. *American Exchange Nat. Bank*, 113 N. Y. 593).

Instead of transmitting the fund to the Montana bank for appellee's use, or holding it subject to be drawn out by that bank for appellee's use, appellant, on the very day on which it received the fund, credited it, upon its books, generally to the account of the Montana bank, and, the Montana bank being indebted to it in more than the amount of the fund, the appellant subsequently refused to pay over the fund to appellee upon demand being made for it. Appellant thus applied a fund belonging to appellee to the payment of its own debt against the Montana bank. This it had no right to do, because the letter, transmitting the fund to appellant, informed appellant that the money belonged to appellee, and was merely to be credited to the Montana bank for the use of appellee. By accepting the fund under the terms named in the letter appellant became the depository of the fund for appellee's use, and took the money with notice that it was charged with such use. (*Drovers' Nat. Bank* v. *O'Hare*, 119 Ill. 646).

The fund was sent by appellee from Milwaukee to appellant at Chicago on July 21, 1893, and was received by appellant at Chicago on July 22, 1893. On the latter day appellant mailed a postal card to the Montana bank, informing that bank that appellant had received the fund and had credited it to the account of the Montana bank. But the Montana bank suspended business at the close

of business hours on July 23, 1893, and never afterwards resumed business; on the morning of the next day, July 24, it was seized by the national bank examiner, pursuant to orders from the comptroller of the currency, and subsequently went into the hands of a receiver.   It did not receive the postal, advising it of the credit of this fund to it by appellant, until after its failure.   By the failure of the Montana bank, the purpose, for which the deposit was made, failed and could not be executed.   It thereby became impossible for the Montana bank to receive the money in trust for the use of appellee, and for the appellant to transmit it to that bank for the use of appellee, or to hold it subject to the order or draft of that bank for appellee's use.   It results that, inasmuch as the purpose of the deposit of the fund with appellant has become incapable of execution, appellant holds the fund to the use of appellee, and has become liable to repay it to appellee. (*Drovers' Nat. Bank* v. *O'Hare, supra; Cutler* v. *American Exchange Nat. Bank, supra*).

It is contended, however, that the entries by the Montana bank of a credit to Dunn, and of a charge against the appellant, for the amount of the fund after the Montana bank received notice on July 21, 1893, of the deposit of the money to Dunn's account in the appellant bank, made the Montana bank the owner of the credit given by appellant to that bank, and, therefore, that the Montana bank alone is entitled to sue appellant.   The credit given by appellant was not to the Montana bank, but to that bank as trustee for the use of appellee or its superintendent.   A deposit due to the Montana bank as trustee for the use of appellee could not be off-set against the Montana bank's private debt to appellant, (1 Morse on Banks and Banking, sec. 334), and, hence, the case must be looked at as though appellant was not a creditor of the Montana bank.   As appellant had no right to pay its claim against the Montana bank with this fund which belonged to appellee, the fund is to be regarded as still

in the hands of appellant, unused and unappropriated. The question then is, whether the receiver of the Montana bank has the right to sue for the fund, or whether such right belongs to appellee.

It is to be noted, that the Montana bank merely gave Dunn a credit for $750.00 and charged appellant with $750.00, but it never paid any money to Dunn on account of such credit, and Dunn drew no checks against the same. The credit to Dunn and the corresponding debit to appellant upon the books of the Montana bank were merely provisional entries, and did not bind that bank to pay any checks against the fund before receiving notice from appellant that it had accepted the deposit made by appellee. As it did not receive that notice before its failure, it would have had the right at any time before such failure to cancel the credit to Dunn. The title to the fund did not pass to the Montana bank by virtue of these provisional entries made by itself upon its own books in advance of receiving from appellant any remittance of the fund, or any notice from appellant of its acceptance of the deposit, and in advance of any payments made to appellee or its superintendent on account of the fund. No such force or effect can be given to bookkeeping entries, which are regarded as being merely conditional, and which the bank is not precluded from canceling prior to the actual collection or receipt of the money indicated by them. (*Armstrong* v. *National Bank of Boyertown,* 90 Ky. 431; *Cutler* v. *American Exchange Nat. Bank, supra; Commercial Nat. Bank* v. *Hamilton Nat. Bank,* 42 Fed. Rep. 880).

If appellant had remitted the money to the Montana bank instead of sending notice by mail of the deposit and credit, such remittance would not have reached the Montana bank until after its failure, and, in such case, it would not have gone into the general assets of the insolvent bank, but would have been held as a special fund subject to the right of appellee to reclaim it specif-

ically from the hands of the receiver. Appellee should not be placed in any worse position, because appellant retained the fund and paid its own debt with it and sent a letter of advice, than if appellant had forwarded the money and it had not reached its destination until after the failure of the Montana bank. Where a general deposit is made before formal insolvency, there can be no recovery in preference to other creditors, but where the deposit has been kept separate and not fully received before formal insolvency, the depositor may claim it; and money received upon collections subsequently to formal insolvency belongs to the owner of the paper, and can be recovered in full if it can be traced to the particular paper. (2 Morse on Banks and Banking,—3d ed.—secs. 589, 629, 631).

It is quite true, as announced in authorities referred to by counsel for appellant, that, where a customer makes a deposit in a bank, in the ordinary course of business, of a draft or check received and credited as money, and endorsed by the customer to the bank "for deposit" to be placed to his credit, the title to the draft or check vests in the bank, subject to the right on the part of the bank to charge it back to the depositor in case it is not paid on presentment. (2 Morse on Banks and Banking, sec. 574; *American Trust and Savings Bank* v. *Manufacturing Co.* 150 Ill. 336). But in such case there is an actual transfer of the title to the draft or check by endorsement upon the instrument itself. Here, however, there was nothing but a dispatch from appellee at Milwaukee to the bank in Montana, that a credit had been given to appellee's superintendent in the appellant bank at Chicago. This dispatch, and the credit given to appellee's superintendent by the Montana bank upon its books, could hardly operate as a transfer of the fund in appellant's hands in Chicago to the Montana bank in the same way as a check or draft, endorsed for deposit in a bank and credited to the depositor, becomes the property of the bank. There

165—8

is nothing to show, that appellant had any notice or information of appellee's dispatch to the Montana bank, or of the latter's credit to Dunn, or of the arrangement between appellee and the Montana bank for the making of such credit. By the terms of the credit the Montana bank in its individual capacity was not entitled to the fund, but it was only entitled to it as trustee for the use of Dunn; and what took place between appellee and the Montana bank could not change appellant's obligation to hold the fund for the account of the Montana bank to the use of Dunn into an obligation to hold it for the Montana bank without reference to Dunn's interest, in the absence of any notice, on the part of appellant, of such arrangement. Hence, appellant still holds the fund upon the same terms and conditions upon which it originally received it.

If the Montana bank was indebted to appellant, and appellant will lose its debt by the surrender of this fund, it cannot be said that appellee is in any way responsible for the loss. If appellant is obliged to refund the money, it is in no worse condition than if the deposit had never been made. It would certainly be most inequitable to permit appellee to lose the fund altogether through an application of it to the payment of appellant's debt. As the money belonged to appellee and was placed in appellant's hands to be held for the use of appellee, there can be no equity in using it to pay a debt to appellant from the Montana bank, growing out of prior transactions between the Montana bank and the appellant, with which appellee had no connection whatever.

The ordinary relation between banker and depositor is that of debtor and creditor, and has nothing of the nature of a trust in it. (*Bank of the Republic* v. *Millard*, 10 Wall. 152; 2 Morse on Banks and Banking,—3d ed.—sec. 289; *Brahm* v. *Adkins*, 77 Ill. 263). When appellee deposited the fund with appellant under the terms contained in the letter of July 21, 1893, appellant, by accepting the deposit,

became a debtor not to the Montana bank, but to the Montana bank for the use of appellee's superintendent. When the Montana bank gave appellee's superintendent credit for $750.00, it was not debtor to such superintendent by virtue of any money actually deposited with it; it had received no money either from appellee or its superintendent; it had merely given a credit in the expectation that, at some time in the future, it would receive or draw for the fund in appellant's hands. If the Montana bank had actually paid out money to the amount of the credit to appellee or its superintendent upon checks drawn against such credit, then the claim of the Montana bank to the fund now in appellant's hands would rest upon a valid consideration, to-wit: the money previously advanced upon the checks so drawn; but, as no checks were ever drawn against the credit and no money was ever paid out on account thereof to appellee or its superintendent, the claim of the Montana bank or its receiver to the fund now in appellant's hands would have no valid consideration to rest upon. To sustain the claim of the Montana bank to this fund would be to give something for nothing; it would be to give that bank appellee's money in exchange for a mere book entry which appellee never made use of and never realized a dollar upon. A decision, which would lead to such a result, would be most inequitable, and is not demanded by the necessity of enforcing any inexorable rule of law.

It seems that, on September 11, 1893, Dunn filed a claim for moneys due him from the Montana bank, including the amount of the credit so given him, with the receiver of the bank, and that the claim has been allowed. It is insisted, that appellee has ratified the proving of this claim by Dunn, because it has neglected to repudiate Dunn's action. Nothing is shown to have been paid upon the claim, and it was filed and proved without the knowledge, consent or authority of appellee. Appellee's rights cannot be prejudiced in the manner claimed by the action

of Dunn. Nor will the rights of appellant be prejudiced thereby, in case judgment goes against it in favor of appellee for the amount of the fund now in its hands; because, on payment of the judgment, the allowance of the claim can be set aside, or appellant can be subrogated thereto to the amount of the judgment here.

We are not inclined to change the judgment of the Appellate Court so far as it fails to include interest upon the amount in controversy. Without passing upon the question whether interest should or should not have been allowed, we deem it sufficient to say, that, when the motion to enter judgment with interest, made some time after the judgment without interest had been entered, was denied by the Appellate Court, no exception was taken to its action in so denying the motion.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*