Argued January 10, reargued April 4, affirmed April 17, 1923.

## GELLERT, EXR., *v.* BANK OF CALIFORNIA, NATIONAL ASSOCIATION, ET AL.

(214 Pac. 377.)

**Appeal and Error—In Absence of Statement of Facts and Bill of Exceptions, Court can Only Consider Whether Cause of Action is Alleged and Judgment Supported.**

1. Where the record on appeal contains only the pleadings, findings of fact, conclusions of law, and judgment, the only facts before the court are those admitted by the pleadings and those recited in the findings, and the court can consider only whether a cause of action has been stated and whether the findings, together with the admitted facts, support the judgment.

**Appeal and Error—Court must Accept Findings as Verities if Within Pleadings, Where Appeal is on Judgment-roll.**

2. Where the record contains only the pleadings, findings of fact, conclusions of law and judgment, the court cannot inquire into the correctness of the findings, but must accept them as verities to the extent that they are within the pleadings.

**Executors and Administrators—Drafts Purchased by Deceased With Intent to Give to Payees Held Property of Estate Where Intent not Carried Out Before Death.**

3. Where drafts were purchased for the purpose of making gifts to the respective payees, but before the intention was carried out the purchaser died and the drafts passed into the hands of her executrix, as between the bank selling the drafts and the decedent's

estate, the drafts must be deemed to be the property of the estate; it being legally impossible to carry out the deceased's intentions by giving to the payees.

**Principal and Agent—Agency Revoked by Death of Principal.**

4. If one, since deceased, by purchasing drafts at a bank, with the intent to give them as gifts to the respective payees, be deemed to have thereby constituted the bank her agent to carry out such intent, her death before the execution of such purpose would operate as a revocation of the agency.

**Banks and Banking—Money Paid for Drafts not Special Deposit of Purchaser.**

5. The purchase by one at a bank of drafts does not constitute the money paid for them a special deposit in favor of the purchaser.

**Assignments—Sale of Draft by Bank not Assignment of Its Funds Deposited With Drawee.**

6. Under Sections 7919, 7981, Or. L., the sale of drafts by a bank is not an assignment of any part of the funds of that bank in the hands of the drawee to the payee or to any other person.

**Bills and Notes—Liability of Drawee to Payee on Bill of Exchange Begins upon Acceptance.**

7. The liability of a drawee to the payee on a bill of exchange begins upon acceptance.

**Bills and Notes—Drawee of Draft Countermanded by Drawer Before Acceptance, Certification or Payment Obliged to Dishonor Draft When Presented.**

8. If the drawer of a draft countermands it before acceptance, certification or payment, by the drawee, the latter is obliged to refuse to accept or pay it.

**Money Received—Money Paid may be Recovered if Accomplishment of Intended Purpose Becomes Thereafter Legally Impossible.**

9. Money paid for any purpose, the accomplishment of which becomes legally impossible because of subsequent intervening obstacles, may be recovered.

**Executors and Administrators—Money Paid for Drafts Intended as Gifts to Payees, but Never Delivered, Recoverable by Representative of Purchaser's Estate Less Damages to Drawer.**

10. Where one intending to make a gift purchases drafts and thereafter dies before sending them to the respective donees, the price paid for them may be recovered by the representative of the estate from the drawer bank, though it is entitled to deduct whatever loss or damage it has sustained.

---

4. Effect of death of drawer of check as a revocation thereof, see notes in Ann. Cas. 1915A, 443; 43 L. R. A. (N. S.) 109; L. R. A. 1916A, 717.

**Appeal and Error—Sufficiency of Form of Judgment Below cannot be First Questioned on Appeal.**

11. The sufficiency of the form of the judgment below cannot be raised on appeal, where the record is devoid of any evidence that the question had been previously raised.

**Appeal and Error—Supreme Court may Repair Judgment Insufficient in Form.**

12. An insufficiency in the form of a judgment below is not sufficient to justify a reversal and the granting of a new trial, since under Constitution, Article VII, Section 3c, the Supreme Court may repair the judgment by inserting whatever provision should have been made below.

**Interest—Held Recoverable from Date of Demand.**

13. In an action by an executrix to recover of a bank money paid by decedent for drafts which were intended as gifts to the payees but never delivered, interest is recoverable from the date of demand, under Section 7988, Or. L., notwithstanding the right to recover was denied in good faith.

**Action—Final Order in Action at Law Entered After Dismissing Equitable Cross-complaint Held Judgment in Action at Law.**

14. In an action at law by an executrix to recover the amount paid for drafts purchased by decedent with the intent to give them to the payees, which intent was unexecuted at the time of her death, where, pursuant to Section 41, Or. L., the two payees were impleaded as parties defendant and filed answers in the form of equitable cross-complaints which, after taking evidence, were dismissed without prejudice because no cause of action had been stated and thereafter judgment entered for plaintiff against defendant bank, *held*, that such final order against the bank was a judgment in an action at law and not the decree in a suit at equity.

**Action—Distinction Between Actions at Law and Suits in Equity not Abolished by Statute.**

15. Under Section 390, L. O. L., as amended by Laws of 1917, page 126, the distinction between actions at law and suits in equity is not abolished, though defendant is permitted in an action at law to plead matter requiring relief at the hands of the equity side of the court instead of filing an answer at law and a complaint in equity as formerly.

**Appeal and Error—Appeal from Judgment at Law will not Permit Review of Decree in Equity Determined in Same Action Below.**

16. Under Section 390, L. O. L., as amended by Laws of 1917, page 126, permitting a defendant in an action at law to plead in answer equitable matter, the proceedings at law are stayed upon filing of the equitable matter until such matter is determined by a decree in the equity side of the court, as in a suit in equity when the case at law may proceed to judgment and to secure a review of either the decree in equity or the judgment at law, an appeal must be taken therefrom and an appeal from one will not operate as an appeal from the other so as to permit a review of both.

Appeal and Error—Appellant from Judgment at Law Held not Entitled to Review of Decree in Equity Entered Below in Same Case.

17. In an action by an executrix to recover of a bank the amount paid by decedent for two drafts, which were intended to be gifts to the payees but which were never delivered, where the payees were impleaded as parties defendant and pleaded as part of their answer equitable matters constituting a cross-complaint which was subsequently dismissed because no cause of action had been stated against them, and thereafter judgment rendered against the bank in favor of plaintiff from which the bank appealed, *held,* that under its appeal from the judgment it was not entitled to a review of the dismissal in equity of the payees' cross-complaint.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

This is an action prosecuted by Sarah Gellert, as executrix of the estate of Jennie Posner, deceased, against the Bank of California, National Association, a corporation, for the recovery of $3,920, with interest, received by the bank from Jennie Posner for two drafts delivered by the bank to Jennie Posner. The action was begun against the bank alone, but the trial court required the plaintiff to make as parties defendant Flora Levor, a resident of the City of New York, and Mrs. E. W. Posner, a resident of the State of New Jersey, who were named as the respective payees in the two drafts. The cause was with the consent of the plaintiff and defendant tried to the court without a jury. After hearing the evidence the court dismissed without prejudice the proceeding as to Flora Levor and Mrs. E. W. Posner, on the ground that they were not properly impleaded and for the reason "that their answers and cross-complaints were unavailable in this action." Thereafter "in determining what remained of the controversy," the court made findings and rendered a judgment against the bank for $3,920 with interest. The bank appealed.

The record originally presented to us contains only the pleadings, findings of fact, conclusions of law and

judgment. There is no bill of exceptions, and none of the evidence is made a part of the record on appeal. We cannot take notice of any facts except those which are admitted by the pleadings or recited by the court in the findings of fact. The question for decision is whether upon the facts admitted in the pleadings and the facts recited in the findings the plaintiff is or is not entitled to a judgment against the bank; and therefore it is important to know what those facts are.

The defendant has a place of business in Portland, Oregon; and its New York correspondent was J. P. Morgan & Co., a banking concern of the City of New York. At the time of the drawing of the two drafts involved in this action the bank had on deposit with J. P. Morgan & Co., and at all times since has had, a sum of money largely in excess of $3,920 applicable to the payment of any drafts or demands that might have been made upon it by the defendant bank. On May 10, 1920, Jennie Posner had on deposit with the defendant bank to her credit more than $9,000; and on that date and at her request the defendant bank drew two drafts on J. P. Morgan & Co. Each draft was for $1,960, and was payable at sight; one was payable to Flora Levor and the other to Mrs. E. W. Posner. The bank delivered both drafts to Jennie Posner, deducted from her deposit the sum of $3,920, the amount of the two drafts, and the further sum of $3 as exchange for drawing the drafts. At the time of the drawing of the drafts and "in its usual and ordinary course" the bank notified J. P. Morgan & Co. of the drawing of the drafts upon the latter, and the bank "credited J. P. Morgan & Co. upon its books for the amount of said two drafts."

Neither Flora Levor nor Mrs. E. W. Posner parted with any consideration to the bank for drawing the

drafts or to Jennie Posner for procuring the drawing of the drafts; but Jennie Posner procured the drafts "for the purpose and with the intention of making a gift thereof to the payees named therein." Jennie Posner did not transmit the drafts to the payees but retained the instruments in her possession until the time of her death which occurred on May 18, 1920. Jennie Posner left a will which was admitted to probate in Multnomah County, Oregon, on June 1, 1920, and the plaintiff qualified as executrix. The plaintiff took possession of the property of the testatrix "and among the personal property of the said deceased plaintiff obtained possession of the aforesaid instruments and the plaintiff still has them in her possession." On June 2, 1920, the plaintiff tendered the two drafts to the bank for the purpose of cancellation, and demanded that the account of Jennie Posner be credited with $3,920, or that the bank pay that amount to the plaintiff as executrix, but the bank refused; and subsequently the plaintiff commenced this action. The drafts were never presented to J. P. Morgan & Co. for acceptance, certification or payment.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Joseph Simon.*

For respondent there was a brief and oral argument by *Mr. S. J. Bischoff.*

HARRIS, J.—1, 2. Since the record does not contain a bill of exceptions the only facts before this court are those admitted by the pleadings filed by the plaintiff and by the defendant bank and those recited in the findings of the trial court: *Kay* v. *Portland,*

79 Or. 147, 151 (154 Pac. 750); and therefore this court can consider only whether the second amended complaint alleges a cause of action and whether the findings together with the admitted facts support the judgment: *Humphry* v. *Portland,* 79 Or. 430, 434 (154 Pac. 897); *Frazier* v. *Cottrell,* 82 Or. 614, 616 (162 Pac. 834); *Kapischka* v. *Tillamook Hotel Co.,* 86 Or. 498 (168 Pac. 938); *Meridianal Co.* v. *Bourne,* 87 Or. 324 (160 Pac. 1151, 170 Pac. 521). In this condition of the record we cannot inquire into the correctness of the findings but must accept them as verities to the extent that they are within the pleadings. The briefs of counsel assume to supplement the findings with fragments of information concerning occurrences at the trial, but we shall steadfastly confine our attention to the pleadings and the findings.

Accepting as verities the findings of the Circuit Court, the fact situation is one where Jennie Posner, intending to make gifts to Flora Levor and Mrs. E. W. Posner, with her own money bought from the defendant bank two drafts, drawn by the defendant bank on a New York bank with Flora Levor named as the payee in one draft and Mrs. E. W. Posner as payee in the other draft; but instead of consummating her intention by delivering the drafts to the respective payees Jennie Posner retained them in her possession and still had them when she died eight days after the purchase.

The defendant insists that upon the delivery of the two drafts to Jennie Posner the only obligation assumed by the defendant was to pay the drafts if upon presentation the drawee failed or refused to pay; that no state of facts subsequently arising could operate to rescind "the contract that was completely executed as this one has been," or to create an implied

obligation on the part of the defendant to refund the money received on the drafts sold; and that if the plaintiff is entitled to a return of the money paid for the drafts she must look to the drawee and cannot look to the drawer. On the other hand, the plaintiff contends that the death of Jennie Posner made it impossible legally to consummate the intention of Jennie Posner; that the payees never acquired any interest in the drafts, because there was no delivery; and that therefore the drawer is liable to the plaintiff as for money had and received.

3. Assuming as we must that the facts are as recited in the findings, then the conclusion must inevitably be that as between the estate of the decedent and the defendant bank the estate owns the two drafts and is entitled to the money represented by them. It is true that the decedent intended to give the drafts to Mrs. E. W. Posner and Flora Levor, but it is also true that she did not execute that intention, and the result is that because of her death it is now impossible legally to give the drafts or the moneys represented by them to the intended donees. Since the estate owns the drafts, and the payees do not own and cannot be made the owners of them, it necessarily follows that the plaintiff as the legal representative of the estate is entitled to receive the moneys which the drafts represent. The inquiry then is: To whom can and must the plaintiff look for the moneys? Can and must she look to J. P. Morgan & Co.? The defendant so insists. Can and must she look to the defendant bank? The plaintiff so contends.

4, 5. The plaintiff has argued at length concerning the difference between special and general deposits; and she has in a large measure rested her claim on the theory that the facts involved in the issuance of

the drafts created the relationship of principal and agent with the decedent as the principal and the defendant bank as her agent selected for the transmission of the money to the payees named in the drafts. Of course if the transaction created nothing more than an agency for the transmission of funds the death of the principal occurring as it did before the execution of such agency, operated as a revocation of the agency. The defendant insists that the issuance of the drafts amounted to sales of credit, and that the resultant rights are to be ascertained and determined by the rules which are recognized in *Legniti* v. *Mechanics & Metals National Bank,* 230 N. Y. 415 (130 N. E. 597, 16 A. L. R. 185), and kindred cases holding that the payment of money to a bank in this country for transmission to a foreign country by cable or wireless draft on a foreign credit is a mere purchase and sale. While it is not necessary to analyze and exactly define the transaction, it is sufficient to say that obviously the payment by the decedent to the defendant bank for the drafts did not constitute a special deposit. The moneys paid to the defendant bank became its moneys freed from any trust relationship which could give any special or superior rights to the owner or owners of the drafts. If the drawer had become insolvent the next day after the issuance of the drafts, the holder of them would have occupied a position no more favorable than that of a general creditor of the bank. Nor need we attempt to determine whether the transaction involves all or any of the elements which characterize the relationship of principal and agent, although it plainly appears that the controlling facts distinguish the instant case in many essential particulars from certain of the precedents relied upon by the defendant bank; as, *Whitcomb* v. *Carpenter,* 134 Iowa, 227 (11

N. W. 825, 10 L. R. A. (N. S.) 928); *McGorray* v. *Stockton Savings etc. Soc.,* 131 Cal. 321 (63 Pac. 479); *American Exchange Nat. Bank* v. *Loretta Mining Co.,* 165 Ill. 103 (46 N. E. 202, 56 Am. St. Rep. 233); *Cutler* v. *American Exchange National Bank,* 113 N. Y. 593 (21 N. E. 710, 4 L. R. A. 328).   There are also inherent differences between the instant case and those like *Legniti* v. *Mechanics & Metals National Bank,* 230 N. Y. 415 (130 N. E. 597, 16 A. L. R. 185), so explicitly relied upon by the defendant.

The instant case is simply the ordinary one of the purchase of drafts by one person residing at the place of the drawer for the purpose of paying money to another person residing at the place of the drawee bank; and many like transactions, perhaps thousands, occur each day in the business world.

6. The paper issued by the drawer bank is sometimes called a banker's check; by business men it is usually termed a draft; but in the strict nomenclature of the negotiable instruments law it is a check, and considered as such is a species of the genus bill of exchange.   However, whether the two drafts are classified under Section 7918, Or. L., or under Section 7977, Or. L., the result, in the attending circumstances, will be the same.   It must be remembered that on the facts recited by the record the drafts have not yet been presented to the drawee and that they can never be presented to the drawee by the payee.   And since the estate of the decedent is the owner of the drafts the plaintiff as the legal representative of the estate is assuredly entitled to receive the moneys represented by the drafts either from the drawer or from the drawee.   Although the drawer had funds in the hands of the drawee for the express purpose of meeting drafts drawn upon the drawee the issuance of the two

drafts did not operate as an assignment of any part of those funds to the payees or to any other person: Sections 7919 and 7981, Or. L.; *Hunt* v. *Security State Bank,* 91 Or. 362, 368 (179 Pac. 248); *Jones* v. *Crumpler,* 119 Va. 143 (89 S. E. 232); *Rambo* v. *First State Bank of Argentine,* 88 Kan. 257 (128 Pac. 182); *Clark* v. *Toronto Bank,* 72 Kan. 1 (82 Pac. 582, 115 Am. St. Rep. 173, 2 L. R. A. (N. S.) 83); *Plaza Farmers' Union Warehouse etc. Co.* v. *Ryan,* 78 Wash. 124 (138 Pac. 651).

7. The liability of the drawee to the payee begins with acceptance of a bill of exchange by the drawee (8 C. J. 64, 297); and until a bill of exchange is accepted the drawer is the primary debtor: *Clayton Townsite Co.* v. *Clayton Drug Co.,* 20 N. M. 185 (147 Pac. 460). By the express language of Section 7919, Or. L., "the drawee is not liable on the bill unless and until he accepts the same." Indeed, under the rules of the law-merchant, as recognized by many and perhaps most of the courts, the payee named in a draft could not, before acceptance, sue the drawee, "for the plain reason," as said by Judge COOLEY in *Grammel* v. *Carmer,* 55 Mich. 201 (21 N. W. 418, 54 Am. Rep. 363, 366), "that until acceptance the drawee owed to the payee no legal duty whatever." Furthermore, it is specifically declared in Section 7981, Or. L., that the bank is not liable to the holder of a check "unless and until it accepts or certifies to the check." The drawee does not incur any liability to the drawer until the drawee fails and refuses to pay a bill of exchange. The drafts in controversy have not been presented to the drawee for payment, nor have they been certified or accepted by the drawee; and so the drawee has not yet incurred any liability to anyone, not even to the payees named in the drafts.

8. Since liability of the drawee to the payees or to any other person has not yet arisen on the drafts, it follows that the drawer may by notice to the drawee countermand the order contained in the drafts and command the drawee not to pay, with the result that the only liability incurred by any party is the liability incurred by the drawer; and the only liability which would attach to the drawer, on the facts presented here, would be in favor of the plaintiff: 8 C. J. 64; *Hunt* v. *Security State Bank,* 91 Or. 362, 363 (179 Pac. 248). J. P. Morgan & Co., having as it did funds for meeting drafts drawn by the defendant bank, was simply the debtor of the defendant bank (2 Morse on Banks and Banking (5 ed.), 223); and if the defendant bank countermanded the drafts before acceptance, certification, or payment by the drawee, the latter would be obliged to refuse to accept or to pay them: *Western Union Telegraph Co.* v. *Louissell,* 11 Ala. App. 563 (66 South. 839). Indeed, it has been said in one reported adjudication that the drawee is the agent of the drawer to pay: *Exchange Bank of Wheeling* v. *Sutton Bank,* 78 Md. 577 (28 Atl. 563, 23 L. R. A. 173). No obstacle whatever exists, so far as the facts here presented are concerned, to prevent the surrender of the drafts to the drawer bank, the cancellation of them, and the return of the money paid for the drafts: 33 Banking Law Journal, 61.

Even though the defendant bank refused to countermand the drafts, the drawee would be obliged to decline to accept or pay them if the plaintiff presented them to the drawee, because the order contained in each of the drafts is to pay the money to the payee; and the plaintiff is neither the payee nor an indorsee of the payee. Refusal by the drawee to accept or pay the drafts would not create a liability in favor

of the plaintiff and against the drawee. The plaintiff cannot successfully sue the drawee because the issuance of the drafts did not operate as an assignment of the funds, and until acceptance the drawee is not liable on the drafts. The drawer cannot complain if the drawee declined to accept or pay upon presentation by the plaintiff, because the drawee incurs no liability to the drawer until the drafts are dishonored; and the drafts would not be dishonored until presented by the payees or persons succeeding to their rights. If the rights of the parties are to be governed by the facts recited in the record, it would be utterly futile for the plaintiff to go to New York, as the defendant bank insists she must, and there attempt to obtain the money from J. P. Morgan & Co.

9. The one party to whom the plaintiff can look for a return of the moneys paid for the drafts is the defendant bank. The drafts were purchased for the sole purpose of giving moneys to the payees. The instruments have not yet been delivered to the payees, nor has the drawee accepted them. No liability whatsoever has thus far been incurred by the drawee. The purpose for which the drafts were purchased cannot be acomplished until and unless delivery is made to the payees. But the purchaser of the drafts died after they were issued and before delivery to the payees, and so the death of the purchaser, occurring after the issuance of the drafts, has made it forever impossible legally to accomplish the purpose for which they were purchased; and, whether the purchase of the drafts created the relation of principal and agent for the transmission of money or amounted to a contract for the sale of credit, under a well-established rule money paid for a purpose which cannot be legally accomplished because of a subsequently intervening

obstacle may be recovered: 27 Cyc. 862; 13 C. J. 646;
*Drovers' National Bank* v. *O'Hare,* 119 Ill. 646 (10
N. E. 360); *Atlantic Com. Co.* v. *Zimmerman,* 182
App. Div. 862 (170 N. Y. Supp. 275).

10. The defendant argues that any conclusion which
permits the plaintiff to recover from the defendant
bank and does not compel her to go to New York and
there attempt to recover her money from the drawee
will create confusion in banking circles and make it
necessary for a bank selling drafts to keep two re-
serves to meet them; one at its own place of business,
and another with the drawee bank.   In our view such
a result would not follow.   If at the time of selling a
draft a drawer actually sent the money to the drawee
to enable the latter to meet that draft, the drawer could
certainly be entitled to say to the purchaser demand-
ing a return of his money and the cancellation of the
draft: You must wait until the money can be returned
by the drawee.  And, furthermore, the purchaser
would in the very nature of things be required to pay
the reasonable costs of procuring the return of the
money.   In the instant case, however, the process
thus far has been nothing more than a matter of
bookkeeping.   The defendant bank had on deposit
with J. P. Morgan & Co. "a sum of money largely in
excess of" the amount of the two drafts applicable to
the payment of any drafts or demands that might have
been made by the defendant bank upon J. P. Morgan &
Co.   The defendant bank it is true notified J. P.
Morgan & Co. of the drawing of the drafts, and "cred-
ited J. P. Morgan & Co. upon its books for the amount
of" the drafts; but this book entry was only provi-
sional and did not forever preclude the defendant
bank from countermanding the drafts or of itself
irrevocably reduce *pro tanto* the amount of the debt

owing from the drawee to the drawer on account of the funds deposited with the drawee for meeting drafts. The entry was only conditional; it was not beyond recall. The bank was not and it is not precluded from canceling the entry: *American Exchange Nat. Bank* v. *Loretta Gold & Silver Mining Co.,* 165 Ill. 103, 112 (46 N. E. 202, 56 Am. St. Rep. 233). If the moneys are to be returned to the drawer by the same process which was employed in transmitting them to the drawee then it will be a mere matter of bookkeeping; but whether the moneys are actually returned in specie to the drawer or an adjustment is made by means of bookkeeping, the drawer is entitled to reimbursement from the plaintiff for whatever loss or damage it has sustained.

11, 12. The defendant bank contends that the judgment ought to be reversed because it requires the bank to pay the moneys represented by the two drafts without at the same time requiring the plaintiff to surrender and deposit the instruments in court or to deliver them to the defendant bank. The plaintiff alleged and the defendant admitted sufficient facts to constitute a valid tender of the drafts. Indeed, the defendant admitted in its answer that the drafts had been tendered for cancellation and that it refused to accept the tender and declined to pay the moneys demanded. The record presented to us is absolutely devoid of any evidence that the defendant at any time prior to the appeal questioned the sufficiency of the form of the judgment so far as it relates to the surrender of the drafts. The defendant bank is not now in a position to raise the question on appeal: *Wisconsin Lumber Co.* v. *Greene & Western Telephone Co.,* 127 Iowa, 350 (101 N. W. 742, 109 Am. St. Rep. 387, 69 L. R. A. 968). There are many authorities

holding that the tender of specific articles of property need not be kept good by bringing them into court for delivery when performance is enforced by the court, but that in such cases the title to the property passes to the tenderee and the tenderer holds the articles as bailee for the tenderee: 26 R. C. L. 649, 658, 660; 38 Cyc. 159. Some authorities reject this rule if the articles are notes, bills, bonds and the like because such articles are easily carried about. However, it is not now necessary to decide the question because for aught that appears in the record the point was not made in the Circuit Court; and if the point had been made the plaintiff could easily have obviated any objection by producing the drafts or by submitting to a conditional judgment making the money payable only upon the surrender of the drafts in court for the use of the defendant: *Vickrey* v. *Maier,* 164 Cal. 384 (129 Pac. 273). Moreover, even though the judgment were erroneous because of its silence concerning the surrender of the drafts, it would not alone be sufficient to justify a reversal of the judgment and the granting of a new trial; for we could with propriety, under the authority of Article VII, Section 3–c of the state Constitution, repair the judgment by inserting whatever provision should have been made with reference to the surrender of the drafts. Presumably the drafts have been surrendered to the court for the use of the defendant bank, since nothing to the contrary appears in the record. It is said in one of the briefs that the drafts were introduced as exhibits at the trial, and that they are now in the hands of the clerk; but whatever the fact may be a conditional judgment would afford complete protection to the defendant bank, and we think that at all

events the judgment ought to be conditioned upon the surrender of the drafts.

13. The defendant bank complains because the judgment included interest from June 2, 1920, the date when the plaintiff tendered the drafts to the bank for cancellation and demanded a return of the money paid for the drafts. The contention is that when the right to recover money is in good faith denied, interest will not be allowed on the demand prior to liquidation by judgment. The following precedents are relied upon to support this contention: *Baker County* v. *Huntington*, 48 Or. 593, 603 (87 Pac. 1036, 89 Pac. 144); *Holtz* v. *Olds*, 84 Or. 567, 581 (164 Pac. 583); *City of Seaside* v. *Oregon S. & C. Co.*, 87 Or. 624, 634 (171 Pac. 396). Each of the precedents relied upon by the appellant was based upon the statute as it existed prior to the enactment of Chapter 358, Laws of 1917, amending Section 6028, L. O. L. The amount for which the plaintiff sued was a definite and certain sum. The plaintiff was entitled to recover either the whole amount of each draft or nothing. The amount became due before judgment. By the plain terms of Section 7988, Or. L., as it now reads after amendment, interest "shall be payable * * on all moneys after the same becomes due." Interest was properly included in the judgment: *Case* v. *McKinnis, post,* p. 223 (213 Pac. 422). See also *Baillie* v. *Columbia Gold Mining Co.*, 86 Or. 1, 30 (166 Pac. 965, 167 Pac. 1167).

The defendant bank complains because the trial court dismissed without prejudice the proceeding as to the defendants Flora Levor and Mrs. E. W. Posner. At the hearing in this court the only record before us consisted of copies of the judgment against the bank, notice of appeal and undertaking on appeal,

and a printed abstract exemplifying the second amended complaint, the answer of the defendant bank and the plaintiff's reply to that answer, followed by recitals that the Circuit Court after hearing the evidence dismissed without prejudice the action as to the defendants Flora Levor and Mrs. E. W. Posner and that the court adjudged and decreed that they were not properly impleaded and "that their answers and cross-complaints were unavailable in this action," but reserving "to them the right to enforce whatever claim they had to the two drafts or the moneys represented thereby by an independent proceeding." The abstract then recites that "thereafter the court in determining what remained of the controversy" announced its decision in favor of the plaintiff and against the defendant bank and made and filed its findings of fact, conclusions of law and judgment, which are then set out in full. The judgment was rendered after the dismissal of the answers filed by Flora Levor and Mrs. E. W. Posner. The judgment was against the defendant bank alone; and it was from such judgment that the bank appealed.

At the hearing it was suggested that the clerk of the Circuit Court should send the original pleadings to this court (see Section 554–1, Or. L.); and, accordingly the original answers filed by Flora Levor and Mrs. E. W. Posner together with the original pleadings filed by plaintiff and by the defendant bank were sent to our clerk. We learn from the record now before us that when the plaintiff began this action on July 3, 1920, she made the defendant bank the sole defendant. The bank, relying upon Section 41, Or. L., moved, and the court ordered that the plaintiff amend her complaint by making Flora Levor and Mrs. E. W. Posner "parties to this action and cause said parties to be

brought in''; and, accordingly, the plaintiff filed her second amended complaint making Flora Levor and Mrs. E. W. Posner parties defendant. The defendants so brought in appeared. Flora Levor and Mrs. E. W. Posner filed amended answers to the second amended complaint of the plaintiff; the plaintiff replied to these two answers; and thus issues were raised between Flora Levor and the plaintiff and between Mrs. E. W. Posner and the plaintiff. The answers filed by Flora Levor and by Mrs. E. W. Posner were substantially alike and each presented the same issues.

The plaintiff replied to the answer of the bank, and these pleadings together with the second amended complaint raised issues between the plaintiff and the bank.

On June 16, 1921, the court adjudged and decreed

"that the plaintiff's last amended complaint does not state facts sufficient to constitute a cause of action against said defendants Flora Levor and Mrs. E. W. Posner; that neither of said defendants was entitled to set up an equitable answer or cross-complaint to the plaintiff's last amended complaint; that the equitable answers and cross-complaints of the defendants Flora Levor and Mrs. E. W. Posner should be, and the same are hereby dismissed without prejudice, and without in any manner determining their respective rights, if any there be, to the funds in controversy herein."

On the following day, June 17th, the court made and filed findings of fact and conclusions of law and entered a judgment against the bank.

The language employed in the recorded order of dismissal is the appropriate language for use in suits in equity rather than in actions at law (Section 411, Or. L.); and so upon examining the answers filed by Flora Levor and Mrs. E. W. Posner we should expect to find, just as we do find, that they are in effect

complaints in equity in the nature of cross-bills. The answers, which are alike, admit a few of the allegations of the second amended complaint and deny the remaining allegations; and then they plead "a further and separate answer and defense * * by way of an equitable cross-complaint." This "equitable cross-complaint" is based upon the theory that Jennie Posner intended to make a gift *causa mortis* to her sister, Flora Levor, and to her sister-in-law Mrs. E. W. Posner, and that the drawing of the drafts operated as an equitable assignment of the funds to them, and that upon the delivery of the drafts to Jennie Posner she became a trustee and as such held them for her sister and sister-in-law, and that Sarah Gellert, who is Jennie Posner's daughter, now holds the drafts as trustee for the payees.

The proceeding commenced by the plaintiff is, to the extent that it is based upon the complaint, a pure action at law. The answers of Flora Levor and Mrs. E. W. Posner present themselves in two aspects. To the extent that they specifically admit or deny the allegations of the complaint they may for the purposes of discussion be treated as pleadings in actions at law; but to the extent that they plead "a further separate answer and defense * * by way of an equitable cross-complaint," they must be treated as pleadings in a suit in equity.

14. Obviously the second amended complaint does not state a cause of action against Flora Levor or against Mrs. E. W. Posner. The plaintiff is suing the bank for money, and it must be remembered that this is not a case where the bank has brought the money into court with a prayer that it be relieved from further responsibility and that the various claimants litigate their rights among themselves.

The plaintiff could not obtain a judgment against Flora Levor or against Mrs. E. W. Posner for the recovery of the money or for any part of it. The ruling of the court that the complaint does not state a cause of action against these two defendants was undeniably correct. We may assume for the purposes of discussion that the order of June 16th, to the extent that it declares that the complaint does not state a cause of action against Flora Levor and Mrs. E. W. Posner, is an intermediate order in an action at law, and therefore is reviewable upon an appeal from the judgment entered on the following day. The conclusion is inescapable that the final order of June 17th is a judgment in an action at law and not a decree in a suit in equity; because it is the recorded determination of the issues raised between the plaintiff and the bank; and the "equitable cross-complaints" of Flora Levor and Mrs. E. W. Posner had been previously eliminated. The remaining question for decision is whether the bank, by appealing from the judgment, can review that part of the order of June 16th which dismissed the answers of Flora Levor and Mrs. E. W. Posner.

Under the settled practice as it was prior to the amendment of Section 390, L. O. L., by Chapter 95, Laws of 1917, the defendants Flora Levor and Mrs. E. W. Posner would have filed answers containing the admissions and denials appearing in their present answers, and then each of them would have filed a complaint in equity in the nature of a cross-bill, and this complaint in equity would have contained the affirmative matter constituting the "further and separate answer and defense" appearing in their present answers.

If the instant proceeding had been governed by Section 390, L. O. L., as it was before the amendment of 1917, the action at law begun by the filing of Sarah Gellert's complaint would have been automatically stayed until the Circuit Court finally determined the suit in equity begun by the complaints in equity filed by Flora Levor and Mrs. E. W. Posner. The executrix would have been required to plead to the complaints in equity, issues would have been raised, tried and determined, and the determination when made would have been a decree in a suit in equity. If the court had granted the relief prayed for in the complaints in equity, further prosecution of the action at law would have been permanently enjoined; but if the court had decreed a dismissal of the complaints in equity without prejudice to the right to begin another suit or action, Sarah Gellert could have renewed the prosecution of the action at law begun by the filing of her complaint and she could have proceeded to judgment against the bank, even though Flora Levor and Mrs. E. W. Posner had appealed from the decree of dismissal. Renewal of the prosecution of the action at law would of course have been at the risk of a reversal of the decree. The action at law and the suit in equity in reality would have been separate proceedings, although the filing of the complaints in equity would have automatically operated as an injunction against the further prosecution of the action at law and thus avoided the inconvenience of securing an order restraining the prosecution of the action at law. The distinction, however, between actions at law and suits in equity was rigidly preserved: *South Portland Land Co.* v. *Munger,* 36 Or. 457, 468 (54 Pac. 815, 60 Pac. 5); *Finney* v. *Egan,* 43 Or. 1, 4 (72 Pac. 136); *Donart* v. *Stewart,* 63 Or. 76, 81 (126 Pac. 608);

*Oregon Surety & Casualty Co.* v. *Paulson,* 73 Or. 163, 166 (144 Pac. 571); *Tooze* v. *Heighton,* 79 Or. 545 (156 Pac. 245); *Toy* v. *Gong,* 87 Or. 454 (170 Pac. 936).

An appeal from a decree of dismissal rendered in the suit in equity would not have enabled the appellate court to review a judgment entered in the action at law; nor would an appeal from a judgment entered in the action at law have permitted the appellate court to review a decree of dismissal entered in the suit in equity. A party wishing to review both the decree and judgment was obliged to appeal from both: *Oatman* v. *Epps,* 15 Or. 437 (15 Pac. 709). Attention is now directed to the present and amended form of Section 390, Or. L. The statute, so far as it is material here, reads as follows:

"Sec. 390. Mode of Proceeding in Suit — Cross-Complaint. * * in an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matter up by answer; without the necessity of filing a complaint on the equity side of the court; and the plaintiff may, by reply, set up equitable matter, not inconsistent with the complaint and constituting a defense to new matter in the answer. Said reply may be filed to an answer containing either legal or equitable defenses. The parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer or reply had been filed. Equitable relief respecting the subject matter of the suit may thus be obtained by answer, and equitable defense to new matter contained in the answer may thus be asserted by reply. When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed until the determination of the issues thus raised as a suit in equity by which the proceedings at law

may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. If, after determining the equities, as interposed by answer or reply, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are now provided for in actions of law. No cause shall be dismissed for having been brought on the wrong side of the court. The plaintiff shall have a right to amend his pleadings to obviate any objection on that account. Testimony taken before the amendment and relevant to the issue in the law actions shall stand with like effect as if the pleadings had been originally in the amended form. Provided, nothing in this amendment shall operate so as to affect suits or actions pending at the time the same goes into effect.''

15. The amended form of Section 390 does not abolish the distinction between actions at law and suits in equity, although it avoids some of the inconveniences formerly suffered and does away with a few of the merely formal steps which were previously required: *Simpson* v. *First Nat. Bank,* 94 Or. 147, 162 (185 Pac. 913). See also *Maxson* v. *Ashland Iron Works,* 85 Or. 345, 356 (166 Pac. 37, 167 Pac. 271); *Hooper* v. *Pennick,* 102 Or. 382, 384 (202 Pac. 743); *Acton* v. *Lamberson,* 102 Or. 472, 483 (202 Pac. 421, 202 Pac. 732); *Crossen* v. *Campbell,* 102 Or. 666 (202 Pac. 745); *Mendelsohn* v. *Mendelsohn,* 104 Or. 281, 287 (207 Pac. 158). That the distinctions between actions at law and suits in equity are preserved by the amended form of Section 390, Or. L., is manifest. Although a defendant may now plead in an answer matter requiring relief at the hands of the equity side of the court instead of filing an answer to the action at law and then filing a complaint in equity as was

formerly done, nevertheless when such equitable matter is pleaded in an answer

"the proceedings at law shall be stayed and *the case shall thereafter proceed* until the determination of the issues thus raised *as a suit in equity* by which *the proceedings at law may be* perpetually enjoined or *allowed to proceed in accordance with the final decree.*"

If after determining the equities

"the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are now provided for in actions at law"; and, moreover, "the parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer * * " had been filed.

When Flora Levor and Mrs. E. W. Posner filed their answers the proceeding was, as expressed in *James* v. *Ward,* 96 Or. 667, 673 (190 Pac. 1105), "in the same condition as though under the old statute plaintiff had answered the complaint and filed a complaint in equity in the nature of a cross-bill." When equitable matter is pleaded the case proceeds as a suit in equity until the equitable issues are determined: *Churchill* v. *Meade,* 92 Or. 626, 632 (182 Pac. 368); *Lind* v. *Boulin,* 97 Or. 232, 235 (190 Pac. 1103). The suit in equity terminates in a "final decree," for such are the express words of the statute; and when such "final decree" allows the case to proceed at law "the pleadings containing the equitable matter shall be considered withdrawn from the case," and the court then allows such pleadings in the law action as are now provided for in actions at law. When Flora Levor and Mrs. E. W. Posner filed their answers they

in effect initiated a suit in equity which terminated in a decree of dismissal, after which the action at law proceeded and then terminated in a judgment.

16, 17. Now, as before the amendment of 1917, a party, to secure a review of the decree, must appeal from it, and to secure a review of the judgment must likewise appeal from it; for an appeal from one will not operate as an appeal from the other, and an appeal from the judgment will not permit a review of the decree. Neither the bank nor any other party to the litigation appealed from the decree in the instant case. The bank appealed from the judgment only; and, therefore, even though it be assumed for the purposes of discussion that the order requiring Flora Levor and Mrs. E. W. Posner to be made parties defendant was proper, we cannot review the decree dismissing the suit initiated by them.

The judgment is affirmed, with the modification, however, that it shall be conditioned upon the surrender of the drafts to the clerk of the Circuit Court for the benefit of the bank.            Affirmed.

Rand, J., dissents.