Argued December 13, 1951, affirmed December 3, 1952

# PACIFIC GENERAL CONTRACTORS, INC. *v.*
## SLATE CONSTRUCTION COMPANY
### 251 P. 2d 454

*W. C. Winslow,* of Salem, argued the cause for respondent. With him on the brief was Norman K. Winslow, of Salem.

*Bruce Spaulding,* of Portland, argued the cause and filed briefs for appellant.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

*ON MOTION TO DISMISS THE APPEAL*

LUSK, J.

A motion to dismiss the appeal was heretofore filed by the plaintiff and denied without opinion, with leave to renew it upon the argument. The motion having been renewed, we have reconsidered it.

The action is one for money had and received in which the plaintiff, Pacific General Contractors, Inc. (hereinafter called Pacific) sued the defendant, Slate Construction Company for $43,844.00 and recovered a judgment for $38,844.00. There was but one cause of action pleaded, but the proof disclosed that numerous items entered into the amount for which judgment was granted. Among these was an item of $7,800.00, represented by a check for that amount drawn by plaintiff in favor of defendant and the proceeds of which the defendant received. Defendant claimed in its testimony that the check was given as consideration for the transfer to plaintiff of defendant's equity in two pieces of road construction equipment known as DW-10 caterpillar carryalls. Plaintiff, on the other hand, contended that it had never received any consideration for the check. Apparently (although there are no specific findings on the issue) the court held with the plaintiff and included the sum of $7,800.00 in question in the amount of the judgment awarded to the plaintiff. The implication of that ruling, the plaintiff says, is that the defendant did not transfer its interest in the equipment to plaintiff.

In the case of *Glaser et al. v. Slate Construction Company,* this day decided, the defendant, Slate Construction Company, filed a counter-claim to recover from the plaintiffs therein the reasonable rental value of various pieces of highway construction equipment, including the identical DW-10 caterpillar carryalls in-

volved in the $7,800.00 transaction in the instant case. It appears that during the trial of the Glaser case Slate Construction Company, by its counsel and by its president as a witness, sought to justify the company's claim of ownership of the DW-10's by what is claimed to be the decision in the present case that Pacific had never acquired Slate Construction Company's interest in that property. Among other things, counsel for Slate Construction Company in the Glaser case offered in evidence the judgment in the case at bar, as well as the pleadings, the brief on behalf of Pacific (plaintiff here), and the entire evidence for the stated purpose of showing that Slate Construction Company, and not Pacific, owned the DW-10's at the time of the transaction involved in the claim in the Glaser case. The evidence was admitted over objection of the plaintiffs. The ground of the present motion is that by taking this position the defendant acquiesced in the judgment from which this appeal is taken and recognized its validity.

██ The general rule is that a party cannot claim the benefit of a judgment and at the same time appeal from it. The right to proceed on the judgment and enjoy its fruits and the right of appeal are not concurrent. On the contrary, they are totally inconsistent. An election to take one of these courses is, therefore, a renunciation of the other. *Cottrell v. Prier,* 191 Or 571, 575, 231 P2d 788; *Barnes v. State Industrial Accident Commission,* 112 Or 41, 43, 228 P 684; *Graves v. State Industrial Accident Commission,* 112 Or 143, 148, 223 P 248; *Portland Construction Co. v. O'Neil,* 24 Or 54, 32 P 764; *Moore v. Floyd,* 4 Or 260. The same rule has been held applicable to a party who acquiesces in a part of a judgment while attempting to appeal from the remainder. *West v. Broadwell,* 124 Or 652, 265

P 783; *Bush v. Mitchell,* 28 Or 92, 41 P 155. But as to this class of cases the rule is thus stated: "When the provisions of a judgment are so closely connected and mutually dependent, that a reversal as to one would render necessary the reversal of the others, then a party cannot take the benefit of some of such provisions and still retain the right to appeal." *State v. Wells, Fargo & Co.,* 64 Or 421, 425, 126 P 611, 130 P 983; *Inverarity v. Stowell,* 10 Or 261, 265. And see *Bush v. Mitchell,* supra. Conversely, in the absence of such close connection and mutual dependence, a party may take the benefit of a part of the decree and still retain his right to appeal, as was held in *State v. Wells, Fargo & Co.,* supra. This seems to be the law generally. Thus it is said in 4 CJS 398, Appeal and Error, § 212: "Where a judgment or decree relates to two or more distinct matters, or demands, acquiescence therein as to one of such matters or demands will not bar an appeal as to the others." See, also, 2 Am Jur 978, Appeal and Error, § 215. A valuable annotation upon this subject, entitled "Right of appeal from judgment or decree as affected by acceptance of benefit thereunder" may be found in 169 ALR 985.

Of course, in this case, the judgment being against Slate Construction Company, it can scarcely be said that it accepted the benefits of the judgment, or any part of it, as in cases where one who is awarded a judgment for less than he demands, accepts the lesser sum and still attempts to appeal. See *Bush v. Mitchell,* supra, and cases cited in 169 ALR 989. If defendant has waived its right to appeal it is because it has attempted to take advantage of the judgment affirmatively in another suit and thereby recognized its validity. 2 Am Jur 974, Appeal and Error, § 210. For other illustrations of waiver of the right of appeal by

collateral recognition of the validity of the judgment appealed from, see *Lange v. Devlin,* 80 Or 238, 156 P 260, and *Fluhrer v. Bramel,* 158 Or 694, 72 P2d 47, 73 P2d 265, 77 P2d 824.

We do not have here a judgment with several provisions. Whether the rule applicable to such a judgment can ever be invoked, where the evidence discloses that the conduct asserted to be a waiver of the right of appeal relates to a part only of a general judgment, based upon a single cause of action, is a question which we find it unnecessary to decide. For a discussion of this point see 169 ALR 1029.

■ The decisive inquiry here is whether the defendants' offer in evidence in the Glaser case of the judgment in this case could in any view be deemed such an acquiescence in or recognition of the validity of such judgment as to constitute a waiver of the right to appeal therefrom. In our opinion it could not for the reason that the judgment was not admissible in evidence in the Glaser case. The plaintiffs in that case were not parties, nor in privity with either of the parties, to the case in which that judgment was rendered. As to them the judgment was *res inter alios acta* and could not properly be received "for the purpose of proving the facts recited in the judgment." *Vanderpool v. Burkitt,* 113 Or 656, 666, 234 P 289. See, also, 30 Am Jur 951, Judgments, § 220. In these circumstances the correct rule, we think, is stated in 169 ALR 1005 as follows:

> "The principle of waiver which prevents a party from prosecuting appellate proceedings to reverse a judgment or decree after he has accepted or pursued an advantage under it, is held by many courts to apply not only to cases where the advantage is taken directly under the favorable provisions of the adjudication, but to cases where it is taken collat-

erally and extraneously. To make it applicable, clearly something more must be shown that some expression of satisfaction, or of intention to abide by the decree, made either in court or out of court, *if the legal situation is not thereby changed.* The appellant must have voluntarily taken some such legal advantage, or put the judgment to some such legal use, as itself to operate as a binding waiver." (Italics supplied.)

No change in the legal situation was, or could have been, brought about by offering or receiving in evidence in the Glaser case the judgment in the case at bar, and therefore no waiver of the right to appeal from that judgment resulted.

The motion to dismiss the appeal is therefore denied.

## ON THE MERITS

LUSK, J.

This is an appeal from a judgment in favor of the plaintiff, Pacific General Contractors, Inc., a corporation (hereinafter called Pacific), and against the defendant, Slate Construction Company, a corporation, in the sum of $38,844.00.

Two of the assignments of error in defendant's brief are based upon the circuit court's rulings with respect to an equitable defense interposed in the answer. Questions of procedure thereby raised will first be disposed of.

The complaint states a cause of action at law for the recovery of moneys of the plaintiff had and received by the defendant for the use and benefit of plaintiff during the months of May, June, July and August, 1948, in the aggregate amount of $43,844.00.

To this complaint the defendant filed an answer consisting of a general denial and affirmative matter which is claimed to be an equitable defense under § 9-

102, OCLA. In substance, the answer alleges that the plaintiff and defendant corporations engaged in a joint enterprise in the carrying out of a contract which had been awarded to the defendant for the construction of a road in the vicinity of Roseburg, Douglas County, Oregon; that the funds mentioned in plaintiff's complaint were in part used in furtherance of this venture; that the defendant had not received any money from the plaintiff other than moneys thus used; that the work is nearing completion; that institution of the action is in violation of the terms of said joint enterprise; that the plaintiff has caused property of the defendant to be attached and the performance of the contract to be delayed; and that the conduct of the plaintiff in bringing the action and attaching the defendant's property will cause irreparable loss to both corporations and bring about the failure of the objects of the joint enterprise. By the prayer the defendant asks that the action at law be enjoined and the writ of attachment canceled; that the court decree the parties are joint adventurers in the performance of such contract, and that the money mentioned in the complaint was advanced in furtherance of such joint enterprise; that upon completion of the contract an accounting be had to determine the amount of money due to each of the parties, and for general relief.

Plaintiff filed a demurrer to the affirmative answer on the ground that it did not state facts sufficient to constitute a defense in equity or otherwise to the cause of action stated in the complaint. No order on the demurrer was made or entered. When the cause came on to be tried the equitable issues were first heard in accordance with a stipulation of counsel entered into in open court. After completion of the evidence on the

equitable issues the court advised counsel that he would hold against the defendant on that branch of the case. Counsel for defendant thereupon requested the court to enter a decree to that effect and presented to the court a form of decree of dismissal of the equitable answer. The court refused to enter any decree. Counsel for defendant then asked and obtained leave to file an amended answer. By this pleading the defendant admitted that it had received from plaintiff certain moneys and that plaintiff had demanded the return of such moneys, but denied the remaining allegations of the complaint, and particularly denied that said moneys were received by defendant to or for the use of plaintiff or that defendant was obligated in any way to return said moneys to plaintiff until a time subsequent to the commencement of the action. The equitable answer was omitted from this pleading.

The court then proceeded with the trial of the issues of law, and, upon the conclusion thereof, entered findings of fact, conclusions of law, and a judgment. The findings recite that the defendant had failed to establish its equitable defense and the equitable matter "had been withdrawn by the court"; that the defendant, by permission of the court, had filed its amended answer; and the case "was allowed to proceed at law upon the issues thus formed." There is a further recital that counsel for plaintiff and defendant had "theretofore stipulated in open court to the effect that in the event the court should hold against the equitable defense interposed in defendant's answer, then the court should proceed to hear and try the law issues without a jury." This is followed by a general finding that the defendant is indebted to the plaintiff for money had and received in the sum of $38,844.00.

The defendant has brought to this court a bill of

exceptions which includes all the evidence relating both to the issues in equity and at law.

The defendant contends, first, that there is no evidence whatever to support the judgment. It is virtually conceded that there is evidence that defendant received from the plaintiff a sum in excess of $36,770.00. Defendant urges, however, that this money was the plaintiffs' contribution to a joint adventure between the parties for the performance of a road construction contract awarded to the defendant, which is referred to in the testimony as the North Umpqua job. Since the contract had not been completed at the time this action was brought and the joint adventure was still in operation, the argument is that the money sued for was not due at the time the action was brought. Counsel for defendant might also well have argued, on the assumption of the existence of such joint adventure, that, until there had been a settlement of an account and a balance struck, no action at law by one partner against another would lie. *McKee v. Capitol Dairies,* 164 Or 1, 5, 99 P2d 1013. See, also, 40 Am Jur 452, Partnership, § 465. We think there can be no doubt that evidence supporting this defense was admissible under the general denial. This is an action of assumpsit in which, under the plea of non assumpsit, the defendant is entitled to show almost every defense which tends to prove that no debt was due at the time when the action was commenced. *Vogler v. Webb,* 181 Or 377, 382, 182 P2d 361; 7 CJS 131, Assumpsit, § 26. And, in view of the stipulations of the parties to which we have referred and the course which the trial took, evidence received during the trial of the equitable issue in support of the claim of a joint adventure is to be considered as evidence in the action at law. Much of the former is pertinent to the latter, but it is clear that

this court is not concerned with the equitable defense and that it is not empowered to review the case as one in equity and to try the issues de novo. Even though the circuit court had entered a decree dismissing the equitable defense this court would not have reviewed such decree in the absence of an appeal from it. This is the law as established in the carefully considered opinion of Mr. Justice HARRIS in *Gellert v. Bank of California, National Association*, 107 Or 162, 214 P 377. It was there said, after a full review of the points of difference, as well as of likeness, between the practice before 1917, when the amendment was adopted which permits equitable defenses to actions at law (now § 9-102, OCLA), and the practice under the new procedure:

"Now, as before the amendment of 1917, a party to secure a review of the decree, must appeal from it, and to secure a review of the judgment must likewise appeal from it; for an appeal from one will not operate as an appeal from the other, and an appeal from the judgment will not permit a review of the decree."

■ Of course, there being no decree, there was nothing, so far as concerns the equitable defense, from which the defendant could have appealed. The defendant, however, was not remediless. That it was the duty of the court to enter a decree in accordance with its decision of the equitable issues, is the manifest implication of the Gellert case and of *Friedenthal v. Thompson,* 146 Or 640, 646, 647, 31 P2d 643, where it is said:

"It would appear that, where the defendant asserts an equitable defense and the parties stipulate that the court may hear the whole matter without the intervention of a jury, the court may and should dispose of the entire case in the equitable proceeding: Crossen v. Campbell, supra. However, where the court finds against the defendant

on the equitable defense, a decree may be entered
accordingly and the case be allowed to proceed at
law.''

Performance of the court's duty to enter a decree dis-
missing the equitable defense could have been com-
pelled by mandamus. Nothing in the stipulation, prop-
erly interpreted, had the effect of waiving defendant's
right to have a decree entered from which it might
have appealed. Instead, however, of invoking the
remedy of mandamus, the defendant amended its an-
swer by eliminating the equitable defense and making
some changes in the denials. The defendant contends
that this course was obligatory under the following
provision of § 9-102, OCLA:

"* * * If, after determining the equities, as in-
terposed by answer or reply, the case is allowed to
proceed at law, the pleadings containing the equi-
table matter shall be considered withdrawn from
the case, and the court shall allow such pleadings
in the law action as are now provided for in actions
of law.''

Defendant cites a dictum from *State v. Fitzgerald,* 154
Or 182, 196, 58 P2d 508, which appears to support its
position. What was said upon the subject in that case
was unnecessary to the decision. It is equally unneces-
sary to express an opinion upon it here. We are only
concerned with the question of the scope of review.
Since this is an appeal from a judgment in a law
action and not from a decree in equity, the proceeding
is governed by the rules applicable to such an appeal.
Counsel for defendant has virtually recognized that
this is the case by bringing to this court a bill of ex-
ceptions, a procedure entirely foreign to appeals from
decrees in equity. Hence, we cannot concern ourselves
with the assignments of error directed to the refusal
of the court to enter a decree dismissing the equitable

defense and to the court's "withdrawing the equitable defense."

■ The remaining assignments of error are based upon objections to the findings filed by the defendant and overruled by the court. These raise questions of the sufficiency of the evidence. Under the familiar and long established rule, the sole inquiry is whether there is any substantial evidence to support the findings. If there is such evidence the findings of the trial court are conclusive on appeal, notwithstanding the presence of evidence to the contrary. *In re Wilkerson Estate,* 187 Or 635, 639, 213 P2d 209; *Conger v. Eugene Plywood Co.,* 184 Or 649, 654, 200 P2d 936.

The difficulty with defendants' position is, that while there is evidence to sustain a finding that the money in question—or most of it—went into a joint adventure, there is also evidence to the contrary. The defendant, Slate Construction Company, in 1948 had for some 25 years been engaged in the business of highway construction. Its president was M. C. Slate. Mr. Slate talked to F. T. Glaser, William Glaser, D. E. Turnidge and P. L. Turnidge about the money to be made in the highway construction business, and as a result these men became interested, and with Slate and others organized in May, 1948, Pacific General Contractors, Inc., a corporation empowered, among other things, to engage in the business of constructing highways. The authorized capital stock was 40,000 common shares of the par value of $10.00 each and 1,000 preferred shares of the par value of $100.00 each. Subscribers to the stock included Slate, George Fritz and Webber Doughton, both directors of Slate Construction Company, and the two Glasers and two Turnidges. At the first meeting of stockholders held in Albany May 12, 1948, these men were elected direc-

tors of the new corporation, and at the first meeting of the board of directors, held on the same day, Slate was elected president, Fritz vice president, and Doughton secretary-treasurer.

The controversy turns principally on the question of what was the intention of the parties as to the part which Pacific should play in relation to the North Umpqua job, the contract for which was awarded to Slate Construction Company. The Glasers and Turnidges paid into the treasury of Pacific over $30,000.00 on their stock subscriptions; Doughton and Slate paid in $10.00 on theirs. There is evidence that Doughton, as secretary of Pacific, certified to the correctness of a resolution passed by the board of directors of Pacific on May 25, 1948, which recited that "this corporation is materially interested, through joint enterprise, in the transaction in which Slate Construction Company has applied to the General Casualty Company of America for bonds or undertakings in the amount of $ Various", and authorized Doughton as secretary-treasurer of Pacific to execute agreements of indemnity required by the General Casualty Company of America as a prerequisite to the execution by it of such bonds or undertakings for Slate Construction Company. There is evidence, however, that no such resolution was ever actually passed. There is no dispute about the fact that the board of directors of Pacific authorized the use by Slate Construction Company of $30,000.00 of its capital and that a sum in excess of that amount was drawn out of Pacific's bank account on checks signed by Slate as president and Doughton as secretary of Pacific, and made payable in many instances to Slate Construction Company. The larger part of these moneys went to meet expenses, such as payroll, incurred on the North Umpqua job, although

a considerable amount was used in carrying out another contract of Slate Construction Company on what is referred to as the Estacada job. There is evidence that at the meeting of the board of directors of Pacific held May 25, 1948, when the authority to advance to Slate Construction Company the sum of $30,000.00 was granted, it was agreed that Pacific should become a joint adventurer with Slate Construction Company in carrying out the North Umpqua contract. But this evidence is directly contradicted by the testimony of D. E. Turnidge, Percy Turnidge, William Glaser and Frank Glaser. The minutes of the meeting of May 25 are inconclusive on the question of whether the $30,-000.00 was to be a contribution to a joint adventure or a loan. These minutes were corrected at a later meeting so as to show that the authorization was ''to loan'' the money ''for carrying on work on the two present projects'', that is, the North Umpqua and the Estacada jobs. The question as to which version of the minutes was the correct one was for the trier of the facts, and, in view of the judgment that has been rendered, the trial judge must have found that the action taken was in accordance with the corrected version. We have no authority to disturb that finding. It is the plaintiff's theory that Pacific was organized for the purpose of engaging in road construction work itself, and that the authorization to advance $30,000.00 to Slate Construction Company was made without any understanding as to when the money was to be repaid and with the expectation that such terms as the rate of interest and dates of payment were to be agreed upon later, and that this was never done. If these were the facts then the moneys became payable upon demand. Certainly there is evidence in support of plaintiff's theory. The checks on the bank account of Pacific to which we have

referred were drawn, and a record of them kept on the stubs, by Webber Doughton, who was not only secretary-treasurer of Pacific but was also, as has been stated, a director of Slate Construction Company as well as an employee of that company and the holder of about $18,000.00 of its stock. The stubs show that two of the checks made payable to Slate Construction, one for $5,000.00 and the other for $2,000.00, represented loans to Slate Construction Company. There is uncontradicted evidence that some of the funds thus obtained by Slate Construction Company were used in the prosecution of the Clackamas County job, notwithstanding the evidence on behalf of the defendant is to the effect that the alleged joint adventure was entered into for the purpose of carrying on the Roseburg job. The record in the case is long, with numerous exhibits. Some of the transactions referred to in the testimony are quite complicated, and from them divergent inferences may be drawn as to the true relationship between the two corporations.

■ Where the issue is partnership *vel non* and the evidence is conflicting the question becomes one of fact. 40 Am Jur 190, Partnership, § 87; annotation 137 ALR 12. We have pointed out some of the major conflicts in the evidence. These, without more, are sufficient to demonstrate the want of merit in the assignment of error directed to the proposition that there is no evidence to sustain the judgment.

The other assignment of error with respect to the sufficiency of the evidence is as follows: "The court erred in finding for plaintiff in the amount of $38,-944.00." It is argued in support of this assignment that the greatest judgment which the evidence will sustain is $36,770.00, that being the amount of the total paid-in capital of Pacific. This argument overlooks evidence with respect to a shovel purchased by Slate Construc-

tion Company with the proceeds of a loan obtained from the First National Bank of Portland, Albany Branch, by D. E. Turnidge, Webber Doughton, George Fritz and P. L. Turnidge. On May 3, 1938, these men signed a note to the bank for $38,000.00 and turned over the money thus obtained to Slate Construction Company. Slate Construction Company purchased a Lorain L 80 model shovel, paying therefor $35,926.53 from the proceeds of the loan. Slate Construction Company sold the shovel to Fred Slate, brother of Mac Slate for $36,456.86, and this sum was immediately deposited to the credit of Pacific. On June 2, 1948, Pacific paid the amount of the loan with interest, in all $38,158.33, to the bank. While Pacific had not been organized at the time the money was borrowed, yet the whole transaction shows that the money was borrowed on behalf of a corporation to be thereafter organized, and that it was Pacific's money which paid the note. In these circumstances, any money remaining in the hands of Slate Construction Company out of the $38,-000.00, after paying for the shovel, in equity and good conscience belonged to Pacific and must be considered as money had and received by Slate Construction Company for the benefit of Pacific. The amount so retained, being the difference between what Slate Construction Company paid for the shovel, $36,456.85, and $38,000.00, the proceeds of the loan, is $2,073.47. Counsel for defendant virtually concedes in his brief that there is evidence that the defendant received from the plaintiff a sum equal to the total of the paid-in capital, namely, $36,770.00. That amount, added to $2,074.00 retained by Slate Construction Company from the shovel transaction, comes within 53 cents of the amount for which the court rendered judgment.

The judgment is affirmed.