Argued April 7, reversed May 31, 1977

LEGARD et ux, *Respondents,*
*v.*
SUNLIGHT TRANSFORMER COMPANY, *Appellant.*
(TC 45937, SC 24699)
564 P2d 1047

Frederick L. Decker, Albany, argued the cause for appellant. With him on the briefs were Goode, Goode, Decker & Hinson, P.C., Albany.

John S. Horton, Albany, argued the cause for respondents. With him on the brief were Weatherford, Thompson, Horton, Brickey & Powers, P.C., Albany.

Before Denecke, Chief Justice, and Bryson, Lent and O'Connell,* Justices.

LENT, J.

*O'Connell, J., did not participate in the decision in this case.

## LENT, J.

This is an action to recover damages for breach of contract for the sale of shares of stock brought by the seller against the purchaser. Defendant interposed equitable defenses which the court found unsupported by the evidence. The case was then set for trial on the legal issues. Defendant made a motion to amend its answer, which was denied, and on plaintiffs' motion a judgment on the pleadings was entered in favor of plaintiffs. Defendant appeals from the decree in equity and the judgment on the pleadings.

Defendant Sunlight Transformer Company was incorporated in March 1965 for the purpose of manufacturing and repairing small transformers. Plaintiff Roady Legard served as vice-president of the corporation, a member of the board of directors and sole manager of the corporation's day-to-day operations. He and his wife, Bernice Legard, co-plaintiff, kept the corporation's records and books. They did not prepare the corporation's income tax returns.

Spokane Transformer, the sole stockholder of Sunlight Transformer, was owned and operated by Richard Boyce, plaintiff's brother-in-law. In July 1967 Mr. Boyce gave to Mr. Legard 250 shares of the common stock of Sunlight Transformer Company.

In February 1974 Rockwood Products, Inc., a Washington Corporation, purchased Spokane Transformer, retaining Mr. Legard as vice-president and general manager of Sunlight Transformer. Soon thereafter, Mr. Legard let it be known that he wanted to resign as an officer of the company and negotiations began regarding the purchase of his interest in Sunlight Transformer. In May 1974 an agreement was entered into calling for the transfer from plaintiffs to Sunlight Transformer of Mr. Legard's 250 shares. As part of the agreement plaintiffs agreed not to compete with either Sunlight Transformer or Spokane Transformer. As consideration for Mr. Legard's agreement he was to receive $300 a month for 10 years. Shortly

after this agreement was entered into, Sunlight Transformer's management informed plaintiffs that they intended to repudiate the contract, whereupon plaintiffs filed suit for anticipatory breach of contract. Defendant demurred to the complaint. After defendant's demurrer was overruled, defendant filed an amended answer asserting equitable defenses and prayed for rescission of the contract. Defendant's amended answer alleged that the following false representations were made by Mr. Legard and that such representations constituted grounds for rescission:

"1) The above-described company [Sunlight Transformer Co.] had made a profit in excess of $67,000.00 in the fiscal year of 1974.

"2) That the company was producing quality transformers acceptable in the industry and that the company was doing a quality job for its customers, and was doing so at a profit, under the management of plaintiff, Roady Legard.

"3) That the company was in sound financial shape, under good management and would continue to prosper.

"4) That plaintiff, Roady Legard, would consult with the new company on a regular basis, would train the new management and would continue to work with the company to the end of continued profitability.

"5) That the worth of said stock was in excess of $30,000.00 based upon the represented profitability, reputation and management of the company."

Although it was not pleaded, defendant asserted at trial and on appeal that plaintiffs also misrepresented the value of the inventory of Sunlight Transformer Company, urging this alleged misrepresentation as also constituting a basis for rescission.

The trial court held that defendant did not make out its defense. In explaining his decision denying defendant's prayer for rescission, the trial court said:

"Particularly, and specifically in regard to item number one in Paragraph IV, the Court finds that there is not sufficient evidence of such a representation.

"Number two item: The Court finds that the defendant has failed to prove the falsity of the alleged representation.

"Item number three: The Court finds that there's no evidence of such a representation, particularly in that it would continue to prosper in the future, that type of representation which is of that nature, that can be a sufficient basis for a rescission based on misrepresentation.

"Item number four: The Court finds that there is no evidence of falsity in respect to item number four.

"And item number five: The Court finds that there is not sufficient evidence that such a representation was made."

We agree with the trial court's appraisal of the evidence as it relates to each of the allegations in defendant's answer.

■ Defendant's claim to the right to rescind the contract is based mainly upon plaintiffs' alleged misrepresentations concerning the profit of Sunlight Transformer in 1974 and the value of the inventory. The evidence to support this position consisted of balance sheets sent by Mr. Legard to Spokane Transformer. These balance sheets, prepared by plaintiffs, do purport to show that Sunlight Transformer made a profit for 1974 of approximately $67,000. It also showed inventory valued at approximately $74,000. An accountant for defendant testified that these figures were overstated by a substantial margin. The trial court's ruling that defendant did not make a representation concerning the profits was based upon the further testimony of the same accountant. Under questioning by the court the accountant stated that a substantial cause of the overvaluation of the profits and inventory of Sunlight Transformer was adjustments which were made by Spokane Transformer in keeping its records and computing the income tax. That testimony shows that the balance sheets sent to Spokane Transformer were not meant by Mr. Legard nor taken by Spokane Transformer as accurate repre-

sentations of the actual value or profits of Sunlight Transformer but were given to the parent company to enable it to prepare both companies' income tax returns.

Defendant's further alleged misrepresentations are without substantial support in the evidence and we therefore hold that defendant has not made out the equitable defense of rescission.

A difficult problem is presented by defendant's contention that the court erred in denying defendant's motion to plead its legal defenses after the equity matter had been heard. The progress of the pleadings which gives rise to the problem presented by this assignment of error was as follows. Defendant's initial answer was a general denial only; no affirmative defense was pleaded. After depositions were taken, and pursuant to stipulation of counsel that no objection would be taken, defendant filed its amended answer.[1] The amended answer contained no general or special denial; defendant admitted that it purchased the stock and that as a part of the transaction it agreed to pay plaintiffs $300 per month for a period of 10 years, but asserted equitable defenses based upon alleged misrepresentations, and prayed for rescission of the contract. A reply was filed to this amended answer, and the case went to trial on the equity side, resulting in a decree adverse to defendant.

Defendant then moved "for an order allowing defendants (sic) to amend their (sic) general denial on file herein." Apparently no amended pleading was tendered with this motion. On the following day defendant moved the court "for an order allowing defendant to file an answer as to the legal questions raised in this case, or in the alternative to amend its general denial on file herein." It appears that with the latter motion defendant tendered an answer contain-

[1] Defendant contends that the stipulation was broad enough to permit a later amended answer also. We agree with the plaintiffs that the stipulation was not so broad.

ing a denial of every allegation in the complaint except the defendant's corporate capacity. (In its original answer defendant had asserted a denial even of that allegation.) The tendered answer also contained an affirmative defense alleging that plaintiffs' agreement not to compete was without consideration "in that the agreement for exchange for such promise by the Plaintiffs was not bargained for by the parties." The court denied the motion to amend without any reference to the fact that there were two motions actually on file. Thereafter, since the amended answer contained neither general nor special denial of the facts alleged in the complaint, the court granted judgment on the pleadings for plaintiff.

Defendant first contends that the following language in ORS 16.460(2) is to be construed as permitting it to plead its legal defenses after the interposed equity matter has been heard:

"* * * If, after determining the equities, as interposed by answer or reply, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are provided for in actions of law."

Plaintiffs contend that ORS 16.290(2) governs the matter:

"(2) The answer of the defendant shall contain:

"(a) A general or specific denial of each material allegation of the complaint controverted by the defendant, * * *.

"(b) A statement of any new matter constituting a defense or counterclaim, * * *.

"* * * * *"

Plaintiffs' position is that defendant abandoned its general denial when it filed its amended answer and that the affirmative defense contained in the tendered further amended answer was an attempt to relitigate matters already heard on the equity side. The trial court was of the same mind, having ruled orally as follows:

"THE COURT: It is the Court's ruling that the motion to file the tendered Amended Answer is denied. The Court finds that the issues tendered by the Amended Answer are issues which have been previously litigated in the previous hearing, particularly in view of the fact that the defendants in their trial of that issue stated that they were relying upon the fiduciary capacity of the officer or of the plaintiff. There was some dispute in that trial as to whether that issue was properly before the Court on the rescission issue, but it was allowed to be tried as a theory of the defendant's case that the plaintiff Legard had a fiduciary obligation and duty and that was stated to be one basis for the claimed rescission and that issue was an issue in the previous hearing. So the motion to file the amended pleading is denied. You may prepare the order. The case now still stands as set for trial as previously indicated."

We can understand the trial judge's desire to bring the litigation to an end if all matters were actually disposed of in the trial on the equity side. This is not necessarily so, however, for in addition to the affirmative defense, which may or may not have presented issues already litigated, defendant sought to interpose what amounted to a general denial of the claim asserted by plaintiffs. Such a denial would permit the defendant to show almost every defense which would tend to prove that no money was owing from it to plaintiffs under the contract at the time when the action was commenced. *See Pac. Gen. Contrs. v. Slate Const. Co.,* 196 Or 608 at 617 (1952). It may be that defendant will be unable to produce evidence on the law side to raise any issue of fact not already litigated, but the trial court can deal with any attempt to relitigate upon trial on the law side. Plaintiffs concede that had the amended answer containing the equitable defenses contained general or special denials, defendant would have been entitled to trial of the issues thereby raised on the law side of the court.

It is obvious from the wording of the two motions to amend after decree that defendant believed its general denial originally filed still to be in the case. It appears

that defendant believed its asserted equitable defenses could not be accompanied by a general denial. In this defendant probably erred.

■ Regardless of that, however, we believe ORS 16.460(2) requires the allowance of plaintiffs' motion to amend. This being so, there would be issues to try on the law side, and the case must be remanded for the purpose of allowing the filing of the tendered amended answer and further proceedings in due course.

We reach this conclusion after reviewing the background of ORS 16.460(2). Prior to 1917, Lord's Or Laws, § 390 (1910), provided:

> "Bills of revivor and bills of review, of whatever nature, exceptions for insufficiency, impertinence, or irrelevancy, and cross-bills, except as hereinafter mentioned, are abolished; but a decree in equity may be impeached and set aside, suspended, avoided, or carried into execution by an original suit; and in an action at law, where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may, upon filing his answer therein, also as plaintiff, file a complaint in equity, in the nature of a cross-bill, which shall stay the proceedings at law, and the case thereafter shall proceed as in a suit in equity, in which said proceedings may be perpetually enjoined by final decree, or allowed to proceed in accordance with such final decree. The mode of proceeding in a suit, from the commencement to the determination thereof, and thereafter until satisfaction or performance of the decree be had, shall be as provided in this title, and not otherwise."

In 1917 the legislature amended § 390 by deleting that portion of § 390 following the words "and material to his defense" and substituting therefor what is now codified as ORS 16.460(2).

Were it not for the 1917 amendment, defendant would, after having filed its general denial, have filed a separate complaint in equity setting forth the same matters which were presented in this case by amended answer as equitable defenses. Following trial on the

equity side and the entry of a decree in plaintiffs' favor, the action on the law side would have been at issue, and both parties would have been entitled to a trial thereof. The 1917 amendment permits both proceedings to proceed in the same case, and the legislature has specifically provided that if the case is allowed to proceed at law "the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are provided for in actions of law." Here the court entered its decree determining the equities but has refused, by its denial of the motion and entry of judgment on the pleadings, to proceed with the matters to be litigated on the law side.

Assuming, for the sake of argument, that the general denial disappeared from the case when the original amended answer was filed, we still find error. ORS 16.290(2) sets forth a general requirement as to what an answer must contain. On the other hand, ORS 16.460(2) provides for the special instance permitted by the 1917 amendment of the interposition of equitable defenses to an action on the law side, and that statute provides that the court *shall* allow such pleadings as are provided for in actions at law. The legislative language appears to leave no room for exercise of judicial discretion; it commands what the court must do.

We might reach the same result upon another theory and another statute. Since the trial upon the law side had not yet commenced, it seems reasonable to afford defendant the benefit of ORS 16.390:

"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; * * *."

We have often held that although the decision of the trial court will be disturbed only for abuse of discretion, before trial liberality in allowing amendment should obtain. We have said that the court should be

[ 526 ]

more liberal with respect to amendments sought by the defendant, for otherwise he would "forever lose his defense" and be without remedy. *See Garrison v. Goodale,* 23 Or 307, 310, 31 P 709 (1892); *Pacific Co. v. Cronan,* 82 Or 388, 393, 161 P 692 (1916).

Reversed.