James BENNINGTON
and Cynthia Bennington,
*Respondents,*

*v.*

INLAND INVESTMENTS CO., INC.,
an Oregon corporation,
Diamond-A Corporation,
an Oregon corporation,
*Appellants,*

*and*

Mukhtiar S. DHILLON,
*Respondent.*

(CCV9310376; CA A88183)

956 P2d 1028

Richard W. Todd, Leo M. Schuman and Saxon, Marquoit, Bertoni & Todd filed the briefs for appellants.

Katherine O'Neill argued the cause and filed the brief for respondents James Bennington and Cynthia Bennington.

Arie C. DeGroot waived appearance for respondent Mukhtiar S. Dhillon.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

**WARREN, P. J.**

In this case, James and Cynthia Bennington (Benningtons) were awarded specific performance of a land sale contract with Inland Investment Company, Inc. (Inland).[1] Inland appeals various aspects of the judgment. We affirm.

On June 1, 1990, Inland contracted to sell approximately 20 acres of unimproved property to Benningtons for $39,500, including an option on an adjoining strip. Benningtons paid $10,000 down and contracted to pay $300 per month beginning in July 1990. In the contract, Inland promised to grade the access road to the property and provide a survey of the property by August 1, 1990. Inland agreed that if these were not done the Benningtons could deduct $1,800 for the failure to grade and $1,500 for failure to provide the survey from their monthly payments.

Inland failed to grade the road by August 1, 1990; however, at the request of Benningtons, the grading was completed in October 1990. The survey required by the contract was not completed by August 1, 1990, but was provided to Benningtons during the summer of 1991. Believing that Inland had violated both contract provisions, Benningtons began withholding payments in October 1990 and did not resume their monthly payments.

Before entering into the contract with Benningtons, Inland had deeded ownership of the standing and downed timber on the property to Clear Lumber Manufacturing Corp. (Clear Lumber) with the right to remove standing and downed timber until December 29, 1991. Benningtons were aware of Clear Lumber's timber deed. Inland, however, warranted to Benningtons that before closing, Inland would repurchase the standing timber and transfer that ownership interest as part of the contract. Inland assured Benningtons that the standing timber would not be cut. In fact, Inland's

---

[1] Inland's interest in the property involved was assigned to Diamond-A Corporation for reasons unrelated to this appeal. Both Inland and Diamond-A are wholly owned by the same individual and will be referred to as "Inland" for purposes of this appeal.

owner mistakenly believed that he had reacquired his interest in the timber and did purport to convey the standing timber to Benningtons. After Benningtons entered into the contract, Clear Lumber continued to cut standing timber on the property. The trial court valued the removed timber at $11,319.

Benningtons attempted to exercise their option to purchase the adjoining strip of land in November 1990. Inland refused to honor the option agreement, because, believing that Benningtons were in breach of the contract for failing to make their monthly payments, it had sold the property to Mukhtiar Dhillon.

On August 31, 1993, Inland mailed to Benningtons' attorney a notice of default and forfeiture pursuant to ORS 93.915(4). Inland claimed that Benningtons were in default for failure to make their $300 monthly payments after August 1, 1990.[2] The notice provided that, unless the default was cured within 60 days of the date of the notice, the contract would be canceled and deemed null and void. As a sixth affirmative defense and first counterclaim, Inland asserted at trial that, because Benningtons did not cure the default within 60 days, their interest in the property was forfeited. Benningtons, in their seventh claim for relief, requested an order of the court enjoining Inland from declaring a forfeiture of their interest in the property. Benningtons asserted that Inland had failed to comply with the forfeiture requirements of ORS 93.905 *et seq* and that Inland was in breach of the contract at the time of the attempted forfeiture.

After a trial to the court, the court held that Inland's failure to complete the survey required pursuant to the contract was a substantial and material breach and that Benningtons properly withheld five consecutive monthly payments from October 1990 through February 1991, or the total sum of $1,500. The court also held that Inland's failure to complete the grading was a technical breach of the contract but that that breach was cured by Benningtons directing

---

[2] Due to unrelated litigation in federal court concerning Inland, all proceedings concerning the land in question were effectively stayed for a period of two years.

Inland's workers to finish the grading in October 1990. Additionally, the court held that Benningtons were excused from resuming their monthly payments after February 1991, for: (1) Inland's failure to honor the exercise of Benningtons' option; (2) Inland's "selling" of the option property to Dhillon; (3) Inland's failure to preserve the standing timber promised to Benningtons; and (4) Inland's failure to perform its survey, grading and cleanup within the time promised in the agreement.

Before trial, Benningtons deposited with the court $41,000 as evidence of their ability to perform the contract fully. In its judgment, the trial court granted Benningtons specific performance and made the following setoffs and adjustments to the contract price. The original contract price was $39,500. At signing, Benningtons paid a down payment of $10,000, which left an unpaid balance as of June 1, 1990, of $29,500. The court valued the improperly harvested trees at $11,319 and subtracted that amount from the contract price, leaving $18,181. Benningtons made two monthly payments of $300, of which $297.44 was credited toward the principal amount. The court also allowed a $1,500 setoff for Inland's failure to timely complete the survey, leaving a total of $16,383.56 due on the contract plus $7,590.30 in interest from August 1, 1990. Benningtons were awarded attorney fees of $20,417.12 and costs of $1,222.91. After setting off the contract amount, plus interest, against the attorney fees and costs, Benningtons owed Inland $2,333.83.

Dhillon, in his cross-claim against Inland, was awarded $10,150.06, which represented $1,350.65 for his loss of the option property and $8,799.50 in attorney fees and costs. The court ordered that the $2,333.83 then owing from Benningtons to Inland would be taken out of the money the Benningtons had tendered to the court and ordered it paid to Dhillon in partial satisfaction of his judgment against Inland. The remaining amount tendered to the court was given back to Benningtons as a consequence of the credits against the purchase price described above. Dhillon received a judgment for the remaining amount, $7,816.32, against Inland.

Inland makes various assignments of error. First, Inland asserts that its forfeiture of the contract, pursuant to

ORS 93.915, was not stayed during these proceedings and that Benningtons lost any claim of ownership to the property 60 days after the notice of forfeiture was sent. Second, Inland argues that the court erred by setting off the amount Benningtons owed Inland on the contract against Benningtons' attorney fees judgment against Inland, effectively giving Benningtons an unfair priority over the funds. Third, Inland argues that its attorneys' lien, which was filed before the judgment, has priority over the funds that were owed to Inland on the contract price. Fourth, Inland argues that the court erred by measuring the damages for the wrongfully removed timber in terms of stumpage value rather than the change in the retail market value of the land. In response to all assignments of error, Benningtons assert that Inland waived its right to appeal.

■ ■ Benningtons contend that Inland has waived its right to appeal by accepting the benefits of the judgment. The general rule is that a party cannot claim the benefit of a judgment and at the same time appeal from it. *Pac. Gen. Contrs. v. Slate Const. Co.*, 196 Or 608, 611, 251 P2d 454 (1952). Additionally, the same rule has been held applicable, in limited circumstances, to a party who acquiesces in part of a judgment while attempting to appeal from the remainder. *Id.* The rule is predicated on the theory that the law will not allow an appellant to occupy an inconsistent position with regard to an appeal by accepting part of a judgment that the appellant seeks to overturn. *See Schlecht v. Bliss*, 271 Or 304, 308, 532 P2d 1 (1975).

Benningtons assert [ ] Inland accepted the benefits of the judgment when it owed partial payment of its judgment debt to Dhillon to made from the money they deposited into court. They ar that Inland did not appeal the judgment in favor of Dhill and "did not object to paying Dhillon from the deposited f ds and did not file a supersedeas bond to keep the fun from being distributed." *See former* ORS 19.038 and *form* ORS 19.040 (*repealed by* Or Laws 1997 ch 71, § 20) (repl ed with ORS 19.335). Therefore, Benningtons further ass rt, the partial satisfaction of Inland's debt to Dhillon out o the funds they tendered into court is a benefit to Inland tha it accepted, or at least acquiesced in, thus waiving its right o this appeal. The question is

whether Inland waived its right to appeal by allowing the set-off ordered in the judgment to be executed. We hold that it did not.

■     In *Nickerson and Nickerson*, 296 Or 516, 678 P2d 730 (1984), the court attempted to clarify the law of waiver by acquiescence. It stated:

> "We have often held that a litigant may waive the right to appeal if he or she 'acquiesces' in the underlying judgment or decree from which appeal is taken. The acts and circumstances that constitute 'acquiescence' so as to foreclose an appeal, however, deserve more differentiated analysis. Our cases on waiver by acquiescence are numerous and cover the spectrum of civil matters, including dissolutions. The underlying premise of these cases is that a party should not be able to attack the decree while at the same time relying on it to better his or her position or accept its benefits." *Nickerson*, 296 Or at 518-19.

The court generalized the rationale underlying many of the cases on waiver by acquiescence, stating: "In all these cases we found acquiescence because the appellants stood to gain something." *Id.* at 519. It noted that the word "acquiescence" is misleading.

> "The word ascribes an attitude of acceptance or at least resignation to the party whose acts are held to constitute acquiescence, but such an implied attitude is not really material. Whether a party subjectively is satisfied or dissatisfied with a decree, the party may not appeal the decree after taking steps that treat the decree as settling the rights at issue." *Id.* at 520.

In other words, if the acquiescence is inconsistent with a party's position on appeal, the party has waived its right to appeal.

We have held that acquiescence in a court order may waive an appellant's right to appeal. In *Lord v. Pettibon*, 102 Or App 607, 795 P2d 607 (1990), as part of the judgment, the trial court ordered that a promissory note be delivered to Pettibon. Pettibon accepted the promissory note and began enforcement proceedings on it. We held:

> "Even if Pettibon's acceptance of the settlement was 'coerced' by the court, he did not utilize available statutory

procedures to stay enforcement of the judgment pending appeal. * * * [H]is enforcement of the judgment is inconsistent with his challenge to it on appeal." *Id.* at 610.

If Pettibon's appeal had been successful, Pettibon would not have been entitled to the promissory note or any proceeds from it; therefore, his actions in accepting and enforcing the note were inconsistent with his appeal.

In *Cottrell et ux. v. Prier et ux.*, 191 Or 571, 231 P2d 788 (1951), the court ordered specific performance in a land contract case. The judgment required the appellants to execute and deliver to the respondents a warranty deed and other evidence of sale. The court also ordered the respondents, simultaneously with the delivery of these instruments, to pay the balance of the contract price. Those orders were complied with before the appellant filed an appeal. The court held:

"Instead of following the statutory procedure which would have stayed enforcement of the decree, appellants elected to deliver the deed and other instruments to the respondents themselves and to accept from them the balance of the purchase price as decreed by the court. * * * It was a purely voluntary compliance with the terms of the decree, evidently done for the purpose of enabling the appellants to collect and have the use of the balance of the purchase price." *Id.* at 574-75.

Thus, the appellants not only acquiesced in the court's order to deliver the deed to the respondents, but also accepted payment and had the benefit of that money pending trial. If the appellants were successful on appeal, both the deed and the money would need to be returned. Their actions were inconsistent with their position on appeal.

In *Minter-Wilson Drilling Co. v. Richins*, 60 Or App 702, 655 P2d 1060 (1982), *rev den* 294 Or 613 (1983), the plaintiff foreclosed a construction lien against the defendants, and the trial court ordered the sale of all the property described in the plaintiff's lien to satisfy the judgment. The defendants failed to file a supersedeas bond, and the property was ultimately sold and the judgment satisfied through that sale. On the defendant's appeal, the plaintiff argued that the

appeal was moot because the judgment was satisfied. We held:

> "The collection of the judgment by execution sale pending appeal, *per se*, does not render the appeal moot. It is well established that payment of a judgment will not preclude an appeal unless it satisfactorily appears that the payment was voluntary, not coerced, and made with a view of settlement. * * * Here, the judgment was actually paid by a third party when the property was sold on execution, not by any of the defendants. Clearly, it cannot be said that defendants voluntarily paid the judgment." *Id.* at 708 (citations omitted).

This court did not even hint that the defendants waived their right to appeal by acquiescing in the order and failing to file a supersedeas bond. Although the defendants could have halted the sale, thus preventing their judgment from being satisfied, their failure to do so was not an inconsistent act on their part that would bar their right to appeal.

The thread that ties all these cases together is that, in each case, the court looked to whether the appellant's actions were inconsistent with its position on appeal. In *Nickerson*, the court looked to whether the appellant's acquiescence improved his or her position in reliance on the judgment or if the appellant took steps that treated the judgment as settling the issue. 296 Or at 522. In *Pettibon*, we stressed that the appellant's enforcement of the judgment was inconsistent with his appeal. 102 Or App at 610. In *Cottrel*, the court emphasized that the appellant's failure to take statutory steps that would have stayed enforcement of the decree allowed the appellants to collect and use money that, if they were successful on their appeal, would not otherwise benefit them. 191 Or at 574-75. Finally, in *Minter-Wilson*, this court stressed that, even though the appellant's judgment was satisfied, that satisfaction was not voluntary and thus was not inconsistent with the appeal. 60 Or App at 708.

Here, Inland's actions were not inconsistent with its appeal as to Benningtons. The trial court ordered the setoff and any benefit to Inland was cursory at best. Similarly to

*Minter-Wilson,* in this case the partial payment of the judgment in favor of Dhillon was not voluntary and in no way indicated acquiescence or acceptance of the validity of the specific performance judgment for Benningtons. We do not believe that appellants must do everything within their ability to ensure that a benefit, no matter how insignificant, is not involuntarily forced upon them in order to preserve their right to appeal. The line must be drawn where an appellant's actions indicate a position inconsistent with the appeal. Here, we hold that Inland did not lose its right to appeal Benningtons' judgment for specific performance by allowing part of the money deposited with the court by Benningtons to be set off against an adverse judgment in favor of Dhillon, which Inland does not contest. Thus, we reach the merits of Inland's appeal.

■     We understand Inland's first assignment of error to be that the trial court erred by rejecting its sixth affirmative defense, which asserted that the Benningtons' interest in the property had been forfeited pursuant to ORS 93.915 *et seq.* However, it is apparent from the record that Inland failed to follow the procedural requirements of ORS 93.915, which control forfeiture proceedings. ORS 93.915(4) provides, in part:

> "The seller *shall* cause to be recorded in the real property records of each county in which any part of the property is located a copy of the notice, together with an affidavit of service or mailing of the notice of default, reciting the date the notice was served or mailed and the name and address of each person to whom it was given. * * * If, not later than one year after the time for cure stated in a recorded notice and affidavit or any recorded extension thereof, no declaration of forfeiture based upon the recorded notice and affidavit has been recorded and no extension of time for cure executed by the seller has been recorded, *the notice and affidavit shall not be effective for any purpose* * * *." (Emphasis supplied.)

A notice of forfeiture was sent to Benningtons on August 30, 1993. The trial in this case occurred in October 1994. At trial, the court asked the attorney for Inland if the notice of forfeiture had been recorded. Inland's attorney responded that it had not been. The court held that Inland's failure to record

the notice of forfeiture was a "fatal problem," and we agree. The trial court did not err in holding that Benningtons retained their interest in the property and that it had not been forfeited.

Inland's second assignment of error is that the trial court erred in setting off the amount awarded to Inland against its obligation to pay attorney fees. In its judgment, the court found that Benningtons owed $16,383.56 plus interest of $7,590.30 to Inland on the contract. However, Benningtons were awarded attorney fees and costs of $21,640.03. The court set off the two judgments, resulting in Benningtons owing Inland $2,333.83.

■■■■ Inland concedes that in an action seeking the equitable remedy of specific performance, the court has broad discretion in framing the judgment in order to adapt the relief to the circumstances of a particular case. *See Cameron v. Benson*, 295 Or 98, 105, 664 P2d 412 (1983). Additionally, it is clear that a court, in the exercise of its equitable power, may set one judgment off against another. *See Ketcham v. Selles*, 96 Or App 121, 124, 772 P2d 419, *rev den* 308 Or 315 (1989); *see generally* 49 CJS, *Judgments* § 566 (concluding that, as a general rule, one judgment may be set off against another, since a party should not be permitted to collect a judgment in its favor leaving unpaid a judgment against it). However, Inland argues that the court abused its discretion by not awarding Inland the entire amount found due on the contract. Inland suggests that the money tendered into court by Benningtons became its property at the point of tender, at least up to the amount found due on the contract. Inland states:

> "Payment of money into court as tender passes title irrevocably to the party to whom it is tendered. Such tender is a positive admission of damages up to the amount of the tender, and from the time of tender is the money of the party in whose favor the tender is made."

For this proposition, Inland relies on *Kruse v. Blair et al.*, 127 Or 393, 272 P 265 (1928), and *O. R. & N. Co. v. Oregon Real Estate Co.*, 10 Or 444 (1882). This reliance is misplaced and misconstrues the law of tender.

■ In both cases relied on by Inland, the tender was made by the defendant and was an unconditional admission of liability up to the amount of the tender. In other words, the amount tendered was the least amount for which the defendant in either case could be liable. In that context, the Supreme Court held that: "The payment of money into court as an *unconditional* tender passes the title to the money so paid irrevocably to the party to whom it is tendered." *Kruse*, 127 Or at 397-98 (emphasis supplied). In *Kruse*, the court relied heavily on 26 R. C. L. § 36 (the predecessor to American Jurisprudence). That proposition is still supported, with regard to defendants tendering money into court, by 74 Am Jur 2d, *Tender* § 46. However, 74 Am Jur 2d, *Tender* § 47, provides that

> "where money is paid into court by a debtor who is seeking affirmative relief, to the obtaining of which it is prerequisite that he tender to his adversary an amount due the latter, the title to such deposit does not pass to the other party."

In other words, when a tender does not include an admission of liability, it is not unconditional and title to the amount tendered does not transfer. It is conditional to the extent that a plaintiff may owe the money only if the court finds in the plaintiff's favor. Thus, in a case for specific performance, money tendered into court by a plaintiff as evidence of the ability to perform the contract fully if successful remains the property of the plaintiff until the court orders its disbursement.

Here, the evidence shows that Benningtons tendered the money to the court as evidence of their ability fully to perform their obligations under the contract if the court ordered specific performance. *See Gaffi v. Burns*, 278 Or 327, 333, 563 P2d 726 (1977) (holding that plaintiffs seeking specific performance must show that they are ready, willing and able to perform the contract). After the court ordered specific performance, it was clearly within its equitable power to order a setoff of the amount owed under the contract against Benningtons' judgment for attorney fees. *See Selles*, 96 Or App at 124. The trial court did not abuse its discretion.

Inland's third assignment of error fails for the same reasons. Inland asserts that, because the money tendered into court by Benningtons became the property of Inland at the time of tender, an attorneys' lien filed by Inland's counsel prior to the entry of judgment takes priority over Benningtons' equitable right to setoff. As we have concluded, the tender did not become the property of Inland. Thus, the court did not abuse its discretion in using its equitable power to award a setoff regardless of Inland's attorneys' lien. *See Selles*, 96 Or App at 127 (holding that there is no statutory authority giving an attorneys' lien priority over a judgment debtor's right to set off an existing judgment); *see generally*, 7A CJS, *Attorney & Client* § 389 ("where the several judgments asked to be set off against each other were entered in the same action, the equities of the parties are superior to the lien of the attorney").

In its final assignment of error, Inland asserts that the trial court erroneously measured damages for the harvested timber using only stumpage value. The appropriate measure of damages, according to Inland, is the diminution of value caused by the harvesting. We disagree. We have held that the basis for calculating damages is diminution of the value of the land. *Gerdes v. Bohemia, Inc.*, 88 Or App 62, 67, 744 P2d 275 (1987). However, that begs the question of how a court measures the diminution in value. We answered that question in *Gerdes* by saying that "[o]ne measure of damages is the stumpage value of the standing timber." *Id*. In *Gerdes* and since, we have applied stumpage value as the basis for determining diminution in value. *Henderson v. Nielsen*, 127 Or App 109, 118, 871 P2d 495, *rev den* 319 Or 149 (1994). Here, Benningtons supplied evidence of the stumpage value of the timber. Using that evidence, the court valued the timber at $11,319.00. Inland failed to provide any evidence that the diminution of value was less than that amount. The trial court did not err in valuing the reduction in the value of the land as being the stumpage value of the timber.

Affirmed.